E. E. TRIPP EXCAVATING CONTRACTOR, INC. v JACKSON
COUNTY

1. COUNTIES—POWERS GRANTED—IMPLIED POWERS—CONSTITUTIONAL
   LAW.

   The powers statutorily and constitutionally granted to counties
   are to be liberally construed and include those fairly implied
   and not prohibited by the constitution (Const 1963, art 7, § 34).

2. COUNTIES—POWERS GRANTED—CONTRACTS—ARBITRATION AGREE-
   MENTS—STATUTES.

   The power to contract necessarily carries with it the power to
   adjust disputes arising out of the contract; therefore, a county,
   and in turn its board of public works, because it has the power
   to contract, has the authority to enter into an arbitration
   agreement as part of a construction contract as a means of
   resolution of disputes arising from that contract (MCLA 45.3,
   123.732, 123.742[1]).

3. COUNTIES—ARBITRATION AND AWARD—STATUTES—NOTICE.

   A county is precluded from asserting a statutory notice provision
   as a defense against a claim of a construction contractor where
   the county did not complain of the contractor's failure to
   submit its claim to the county board of supervisors as provided

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
   Political Subdivisions § 193 *et seq.*
[2, 3] 5 Am Jur 2d, Arbitration and Award § 68.
[4] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
   Political Subdivisions § 718.
[5] 5 Am Jur 2d, Arbitration and Award § 6.
[6, 7] 5 Am Jur 2d, Arbitration and Award § 14.
[8, 10, 11] 5 Am Jur 2d, Arbitration and Award §§ 95, 96.
[9] 5 Am Jur 2d, Arbitration and Award § 36.
[12] 5 Am Jur 2d, Arbitration and Award §§ 173, 174.
[13] 5 Am Jur 2d, Arbitration and Award § 114.
[14] 5 Am Jur 2d, Arbitration and Award § 91.
[15, 17] 5 Am Jur 2d, Arbitration and Award §§ 136–139.
[16] 5 Am Jur 2d, Arbitration and Award § 54.

by statute until after the dispute had been arbitrated and an award had been entered (MCLA 46.71, 46.72).

4. Counties—Board of Commissioners—Public Works—Request · for Payment—Statutes—Substantial Compliance.

Presentation of a notice and request for payment by a contractor to a county department of public works substantially complies with a statutory notice requirement that such claim be presented to the county board of commissioners, because the board of public works was established by and responsible to the board of commissioners (MCLA 46.71, 46.72, 123.732).

5. Arbitration and Award—Statutory Arbitration—Common-Law Arbitration.

Statutory arbitration and common-law arbitration are coexistent in Michigan.

6. Arbitration and Award—Contracts—Statutory Arbitration —Intent—Entry of Judgment.

Parties to a contract wishing to avail themselves of the provisions for statutory arbitration must clearly evidence an intent to do so by a contract provision for entry of judgment by a circuit court upon the arbitration award.

7. Arbitration and Award—Statutory Arbitration—Entry of Judgment.

The rules and procedures of the American Arbitration Association, when incorporated into an arbitration clause of a contract, do not provide the language required to invoke the provisions for statutory arbitration.

8. Arbitration and Award—Contracts—Termination—Arbitration Agreement—Arbitration Authority.

The unilateral declaration by a party to a contract that the contract is terminated does not ipso facto obviate the effect of an arbitration clause or revoke the authority of the arbitrators.

9. Arbitration and Award—Contracts—Public Policy.

There are no public policy reasons for the courts to stand in the way of parties to a contract who, by a fair agreement, have adopted a speedy and inexpensive means such as arbitration by which to have their disagreements adjusted.

10. Contracts—Arbitration Agreements—Revocation—Intent to Revoke.

A party to a contract did not effect a clear, unambiguous revocation of a common-law arbitration clause where the claimed

notice of revocation, a letter to the arbitration association, did not evidence an express intent to revoke and where the party's actions were not consonant with such a claim.

11. ARBITRATION AND AWARD—CONTRACTS—CONSTRUCTION CONTRACTS —IRREVOCABILITY.

An arbitration agreement in a contract for construction, paving, or installation is within an exception to the general rule that an arbitration agreement is not a bar to action; thus arbitration in the construction contract setting is irrevocable.

12. ARBITRATION AND AWARD—GROUNDS FOR ATTACK.

Grounds for attack of arbitration proceedings are: (1) fraud on the part of the arbitrator; (2) fraud or misconduct of the parties affecting the result; (3) gross unfairness in the conduct of the proceeding; (4) want of jurisdiction in the arbitrator; (5) violation of public policy; and (6) want of entirety in the award.

13. ARBITRATION AND AWARD—ARBITRATION HEARINGS—ABSENCE OF PARTIES—ADJOURNMENTS.

A party to arbitration proceedings who refuses to attend those proceedings after due notice takes the risk of a determination that he was obligated to arbitrate and hence is bound by the award. ·

14. ARBITRATION AND AWARD—VALIDITY OF AWARD—DETERMINATIONS OF ARBITRATORS.

A court will not inquire as to whether the determinations of arbitrators are right or wrong where the parties to a contract have authorized the arbitrators to determine both law and facts, and will not invalidate a common law arbitration award merely because it is unjust, inadequate, excessive, or contrary to law.

15. ARBITRATION AND AWARD—VALIDITY OF AWARD—SCOPE OF AGREEMENT.

An award based upon an arbitration agreement must stand, absent fraud or mistake, but an arbitrary award outside the scope of the agreement is not binding because it has no legal sanction.

16. ARBITRATION AND AWARD—CONTRACTS—ARBITRABLE ITEMS.

A question of the amount of compensation due a contractor because of the rerouting of a sewer system the contractor was installing was an arbitrable item under a provision of the contract subjecting decisions involving time and financial con-

siderations to arbitration, because the amount of compensation is such a financial consideration.

17. ARBITRATION AND AWARD—ARBITRATORS—SCOPE OF AUTHORITY—CONTRACTS—BREACH OF CONTRACT—VALIDITY OF AWARD.

Arbitrators whose authority under the arbitration agreement extended only to their areas of expertise in the construction industry exceeded the scope of their authority in passing on and awarding damages for the element of breach of contract; this does not totally invalidate an award based upon damages caused by change orders as well as upon breach of contract, but such an award must be apportioned and only that portion within the authority of the arbitrators allowed to stand.

Appeal from Jackson, James F. Kelley, Jr., J. Submitted Division 2 January 16, 1975, at Lansing. (Docket No. 19526.) Decided April 8, 1975. Leave to appeal denied, 394 Mich 834.

Complaint by E. E. Tripp Excavating Contractor, Inc., against Jackson County, acting through its Department of Public Works and its Board of Public Works, for confirmation of an arbitration award and for damages for breach of contract. From a partial summary judgment dismissing the counts regarding the arbitration award, plaintiff appeals. Affirmed with modifications.

*John Boghosian,* for plaintiffs.

*Joseph C. Olk* and *Alvin G. Dahlem (Thomas C. Shearer,* of counsel), for defendant.

*Amicus Curiae:* Associated Underground Contractors, Inc., by *Butzel, Long, Gust, Klein & Van Zile* (by *Robert J. Battista* and *John P. Hancock, Jr.).*

Before: T. M. BURNS, P. J., and D. E. HOLBROOK and M. J. KELLY, JJ.

M. J. KELLY, J.

# I

## *Facts*

After competitive bidding, E. E. Tripp Excavating Contractor, Inc., Plaintiff-Appellant, was awarded the general contract for the construction of a sanitary sewer system in Blackman Township, Jackson County. The contract between plaintiff and the Jackson County Board of Public Works was in the amount of $1,330,958.24, and called for completion in one year.

The work was begun in November of 1971. In December, it was discovered that the subsoil conditions were unsatisfactory and that it would be necessary to reroute portions of the sewer. According to the contract, the project engineers Williams & Works were entitled to issue change orders and to adjust completion dates and compensation accordingly.

Attempts to negotiate price and completion date changes proved futile. Tripp claims that the county, through its engineers acting arbitrarily, refused to negotiate in good faith. The county claims that Tripp refused to proceed with certain work contrary to the contract. At any rate, cooperation between the project engineers and the general contractor dissolved in acrimony. On February 14, 1972 the project engineer notified Tripp that if it felt aggrieved it should resort to the arbitration remedy provided by the contract. On March 21, 1972, Tripp filed a demand for arbitration with the American Arbitration Association alleging numerous breaches of contract and requesting relief. On April 3rd the county filed its answer to Tripp's demand for arbitration, denied

wrong-doing and requested affirmative relief. Accompanying the answer and counterclaim was the county's list of proposed arbitrators and a request for hearing dates. Some time after April 3rd and before May 4th, three attempts were made to agree on qualified arbitrators. On May 4th defendant county indicated its consent to what eventually became the three-man arbitration panel consisting of one contractor, one attorney, and one architect. During all this time Tripp continued to work on the various other areas of the sanitary sewer system which were not in dispute over the rerouting.

On May 11th, after the final members of the arbitration panel had been selected in accordance with the AAA's rules, the county notified Tripp and its surety by letter that the county was terminating the contract pursuant to § 3.13 of the General Conditions of the contract and that the contract would therefore terminate ten days after the date of the notice. The county's express justification for termination was that Tripp was in default. This letter stopped Tripp's activity on the project. The arbitration process however continued.

On June 2nd the Detroit office of the American Arbitration Association confirmed the three-man panel by phone and solicited acceptable dates from the parties. An hiatus of 19 days was followed by a letter from defendant-appellee's attorney addressed to the Regional Director of the American Arbitration Association. That letter is set forth here in its entirety:

"American Arbitration Association
Mr. Harry R. Payne II
Regional Director
Room 1035, Penobscot Building
Detroit, Michigan, 48226

"Re: Case No. 54 10 0011 72
E. E. TRIPP EXCAVATING CONTRACTOR, INC.
and
JACKSON COUNTY BOARD OF PUBLIC WORKS

"Dear Mr. Payne:

"On June 2, 1972, we were contacted by your office and advised orally that a three-man Arbitration panel had been selected to hear the above caption case and an inquiry was made to an acceptable date for the Arbitration hearing.

"At that time, I advised your office that on or about May 12, 1972, Jackson County Board of Public Works had issued a notice to E. E. Tripp Excavating Contractor, Inc. pursuant to the provisions of the construction contract advising the contractor of his default and of the county's intent to terminate the contract ten (10) days after issuance of the notice. I further indicated that in view of the issuance of the default and termination of the contract upon the expiration of the ten (10) day period, it was the position of the Jackson County Board of Public Works that the claimant, E. E. Tripp Excavating Contractor, Inc. were not entitled to proceed with the Arbitration and that as far as the Jackson County Board of Public Works was concerned, any further proceeding by the American Arbitration Association in the above caption case should be stayed.

"The purpose of this letter is to officially confirm the position of the Jackson County Board of Public Works. As previously indicated, it is the position of the Jackson County Board of Public Works that the claimant, E. E. Tripp Excavating Contractor, Inc. has no right to proceed with the Arbitration and that the American Arbitration Association should cease and desist from any further proceedings in this matter for the following reasons:

"1. On May 12, 1972, the Jackson County Board of Public Works issued a notice of default to the contractor indicating its intention to terminate the contract ten (10) days after issuance of the notice of default because of the contractor's breach of the terms and conditions thereof. The ten (10) day notice period has expired and at this time, the county considers the contract terminated. Having breached the contract, it is the county's position that the contractor has no right to have Arbitration over the objection of the county at this time.

"2. In the Claimant's Demand for Arbitration, the claimant alledged [sic] that the county had breached the contract. As previously indicated, the county's answer to the Demand for Arbitration, it is the county's position that the question of breach of contract is not a matter within the jurisdiction of the American Arbitration Association to decide, but rather a decision that is properly determined by court of proper jurisdiction. There is ample case authority to support the county's position in this regard.

"3. It should be pointed out that even where an issue in dispute is subject to Arbitration pursuant to the provisions of the contract between the parties, under the provisions of Section 3.04 of the general conditions to the contract it is stated, 'The Contractor shall not delay the work because Arbitration proceedings are pending unless he shall have written permission from the engineer to do so and such delay shall not extend beyond the time when the Arbitrators shall have opportunity to determine whether the work shall continue to be suspended pending decision by the Arbitrator to such a dispute.' The county wishes to point out that with regard to the items in dispute, the contractor has failed to proceed with the work in accordance with the provisions of Section 3.04. This fact in itself constitutes a breach of the terms and conditions of the contract by the contractor and is a waiver by the contractor of his right to Arbitration under the contract.

"Accordingly, the Jackson County Board of Public Works respectfully requests that the American Arbitration Association cease and desist from any further proceedings in the above caption case. If any additional

information is needed by the association from our client to verify the above stated position in order for the association to determine to cease and desist from any further activity on this file, we would be happy to furnish the same upon request.

"In the event that your office should determine to proceed to hold a hearing in the case and to reach a determination on the merits, I would appreciate being advised of your official position in this regard and request that we be notified of any hearing dates scheduled.

"Thank you for your cooperation.

"Very truly yours,

"Thomas C. Shearer."

No copy of defendant's letter to the AAA was sent to plaintiff. It drew a response in the form of a letter directed to counsel of record dated June 28, 1972, postponing the arbitration hearing to July 10th and acknowledging receipt of the previously reported letter. The AAA Administrator's letter is quoted in part:

"This will acknowledge Mr. Shearer's letter of June 21, 1972, in the above entitled matter, a copy of which is enclosed to Claimant's attorneys and to the arbitrators.

"The Association, after reviewing the comments of the parties, has determined that an issue as to arbitrability exists which could be determined by an arbitrator. We will proceed with further administration of this matter unless otherwise requested by both parties, or unless the moving party is stayed by court order."

No application was made for a stay of proceedings by the defendant county. On July 7th, by telephone and by letter, defense counsel was notified that the hearing would proceed as scheduled on July 10th. On the hearing date, plaintiff appeared with its counsel and witnesses. Counsel for

defendant was again notified by phone that arbitration was about to proceed. He declined to appear or participate.

The arbitration hearing commenced July 10th and concluded July 13, 1972. Seven witnesses testified and some 47 exhibits were introduced. The arbitration panel awarded plaintiff $870,565.10. The award was not itemized. When defendant failed to satisfy the award, plaintiff brought suit in a three-count complaint. Count I sought confirmation of the arbitration award as a statutory arbitration. Count II sought confirmation as a common-law arbitration. Plaintiff appeals the trial court's order of partial summary judgment, dismissing these two counts. The third count, for damages for breach of the construction contract, is as yet untried.

## II

### Power of county to contract for arbitration

The county claims that since it has only such power as that prescribed by law and since there is no explicit grant of authority, the county has no power to enter into a contract providing for arbitration. The issue is one of first impression in this state, although cases have reached our Supreme Court where a city or county has entered into such an agreement. See *Detroit v Jackson,* 1 Douglass 106 (Mich, 1843), *Hewitt v Reed City,* 124 Mich 6; 82 NW 616 (1900), *Detroit v A W Kutsche & Co,* 309 Mich 700; 16 NW2d 128 (1944).

The powers statutorily and constitutionally granted counties "shall be liberally construed in their favor" and "include those fairly implied and not prohibited by this constitution". Const 1963, art 7, § 34. *Youngblood v Jackson County,* 28 Mich

App 361, 364–365; 184 NW2d 290, 291 (1970), *lv den,* 384 Mich 810 (1971).

"Each organized county. shall be a body politic and corporate, for the following purposes * * * To sue and be sued, * * * to make all necessary contracts, and to do all other necessary acts in relation to the property and concerns of the county." MCLA 45.3; MSA 5.283.

MCLA 600.5001(1); MSA 27A.5001(1) provides:

"All persons, except infants and persons of unsound mind, may, by an instrument in writing, submit to the decision of 1 or more arbitrators, any controversy existing between them, which might be the subject of a civil action."

In *Grand Rapids v Harper,* 32 Mich App 324, 328; 188 NW2d 668, 671 (1971), *lv den,* 385 Mich 761 (1971), we faced a similar issue. There we held:

"Although the court rule does not give a definition of 'person,' the word 'person' is commonly held to embrace bodies politic and corporate as well as individuals, *e.g.,* MCLA § 8.31 (Stat Ann 1969 Rev § 2.212[12]). We can see no reason for a different rule here * * * ."

Construing statutes similar to ours, a number of our sister states have held that a body politic and corporate was granted the authority to enter into arbitration, *e.g., Hughes v Sarpy County,* 97 Neb 90; 149 NW 309 (1914), and *Madison v Frank Lloyd Wright Foundation,* 20 Wis 2d 361; 122 NW2d 409; 20 ALR3d 545 (1963). The general rule appears to be that, in the absence of a statutory prohibition, a county has the power to submit present and future disputes to arbitration. Anno: *Power of Municipal Corporation to Submit to Arbi-*

*tration,* 20 ALR3d 569; 5 Am Jur 2d, Arbitration and Award, § 68, pp 569–571.

We hold that Jackson County was authorized by law to enter into the arbitration agreement here in issue. Such authority is implicit in the cited statutes and constitutional provision.

By the same token, the Jackson County Board of Public Works was authorized to enter into an arbitration agreement ancillary to the contract. 1957 PA 185 (MCLA 123.731 *et seq.;* MSA 5.570[1] *et seq.)* provides in Section 2 (MCLA 123.732; MSA 5.570[2]) for the establishment of a department of public works "for the administration of the powers conferred upon the county by the terms of this act". One of the powers conferred by the act is set forth in Section 12(1):

"A county operating under this act and any 1 or more municipalities including the county itself may enter into a contract or contracts for the acquisition, improvement, enlargement, or extension of a water supply, a sewage disposal, or a refuse system or the making of lake improvements and for the payment of the cost thereof by the contracting municipalities, with interest, over a period not exceeding 40 years." MCLA 123.742(1); MSA 5.570(12)(1).

We believe that the power to contract necessarily carries with it the power to adjust disputes arising out of that contract in the manner deemed most expeditious by the board of public works. The power to pay the costs of the improvements carries with it the power to provide for appropriate means by which to determine the cost. The means selected by the board of public works to exercise its statutory duties and powers were within its authority. The arbitration agreement is valid.

## III

### *Claims against counties Act*

We do not believe that the result is altered by 1909 PA 58; MCLA 46.71 *et seq.;* MSA 5.521 *et seq.* The pertinent provisions read:

"It shall be the duty of the board of supervisors of each county, or the board of county auditors in counties having a board of county auditors, to adjust, allow and authorize the payment of all claims against the particular county, and any claims not adjusted and ordered paid by the said board of supervisors or board of county auditors, as the case may be, except as provided in this act, shall not be paid. Any claim or any part or portion thereof which may be adjusted or allowed by the board of supervisors or the board of county auditors shall be paid out of the county treasury in the manner provided by general law." MCLA 46.71; MSA 5.521.

And:

"When the claim of any person, firm or corporation against a county shall be disallowed in whole or in part by the board of supervisors or board of county auditors, such person, firm or corporation may appeal from the decision of such board to the circuit court for the same county, by causing a written notice of such appeal to be served on the county clerk within twenty days after such disallowance: Provided, That no appeal shall be allowed, unless such claimant shall have appeared before the said board and presented evidence or shall have attached an affidavit in support of such claim. The appeal herein authorized shall be of no force or effect, unless there is filed with the county clerk at the same time the notice of appeal is served a bond for two hundred dollars running to the county with sufficient surety, to be approved by the county clerk, conditioned for the faithful prosecution of such appeal and the payment of all costs that may be adjudged against the appellant." MCLA 46.72; MSA 5.522.

We perceive the cited provisions to be primarily notice provisions; they are designed to give the board of supervisors a timely opportunity to investigate and gather evidence and to make payment without first incurring the costs of preparing for litigation. Such statutes have been construed as barring suit when the governmental authority can show prejudice. *Lisee v Secretary of State,* 388 Mich 32; 199 NW2d 188 (1972), *Carver v McKernan,* 390 Mich 96; 211 NW2d 24 (1973), *Hussey v Muskegon Heights,* 36 Mich App 264; 193 NW2d 421 (1971). No prejudice has been suggested in this case.

Where the governmental body fails to make a timely assertion that the proper means of bringing an action against it were not employed, it may be precluded from later asserting a notice provision as a defense. *Lisee v Secretary of State, supra, Paxson v Cass County Road Commission,* 325 Mich 276; 38 NW2d 315 (1949). In the instant case, no complaint of failure to comply with the act was made by the county or its agents until after the arbitration award.

Even more compelling is the fact that, whatever the deficiencies in notice to the board of commissioners, timely notice and a request for payment were presented to the department of public works. The department was established by and responsible to the board of commissioners. MCLA 123.732; MSA 5.570(2). At the very most, we have a situation where plaintiff notified the wrong agent but one responsible to the proper principal. In *Meredith v City of Melvindale,* 381 Mich 572; 165 NW2d 7 (1969), it was held that substantial compliance with the statute suffices. Plaintiff herein substantially complied.

The rationale for the doctrine is succinctly stated in *Carver v McKernan, supra,* p 99:

"At the outset, we acknowledge frankly that statutes which limit access to the courts by people seeking redress for wrongs are not looked upon with favor by us."

## IV

### *Statutory arbitration*

We turn to the arbitration issues. *Frolich v Walbridge-Aldinger Co,* 236 Mich 425, 429; 210 NW 488, 489 (1926), makes it clear that statutory arbitration and common-law arbitration are co-existent in this state:

"This article [arbitration clause] is not in conformity with our statutory requirements (3 Comp Laws 1915, § 13646 *et seq.)* and makes no reference to the act, but in any event it is an agreement for a common-law arbitration."

If the contract provided for statutory arbitration the resolution of all issues would shortly have been reached. The consequences of an agreement for statutory arbitration are set forth in MCLA 600.5001 *et seq.;* MSA 27A.5001 *et seq.* Such a provision,

"shall be valid, enforceable and irrevocable save upon such grounds as exist at law or in equity for the recission or revocation of any contract." * * * "Such an agreement shall stand as a submission to arbitration of any controversy arising under said contract not expressly exempt from arbitration by the terms of the contract. Any arbitration had in pursuance of such agreement shall proceed and the award reached thereby shall be enforced under this chapter." MCLA 600.5001(2); MSA 27A.5001(2).
"Neither party shall have power to revoke any agreement or submission made as provided in this chapter without the consent of the other party; and if either party neglects to appear before the arbitrators after due

notice, the arbitrators may nevertheless proceed to hear and determine the matter submitted to them upon the evidence produced by the other party." MCLA 600.5011; MSA 27A.5011.

"Upon the making of an agreement described in section 5001, the circuit courts have jurisdiction to enforce the agreement and to render judgment on an award thereunder. The court may render judgment on the award although the relief given is such that it could not or would not be granted by a court of law or equity in an ordinary civil action." MCLA 600.5025; MSA 27A.5025.

An agreement for statutory arbitration calls into play GCR 1963, 769.1, which is applicable only to statutory arbitration. The grounds for attacking statutory arbitration awards are severely limited by GCR 1963, 769.9(1). Of particular importance is GCR 1963, 769.9(2) which requires that an application to vacate the award be made within 20 days after delivery of a copy of the award. If corruption, fraud or undue means are the grounds upon which vacation is sought, the application must be made within 20 days after the grounds are known or should have been known. Defendant has not made application to vacate the instant award pursuant to the rule.

To create an agreement for statutory arbitration the scrivener must have the enabling statute in mind. Certain language is mandatory:

"(1) All persons, except infants and persons of unsound mind, may, by an instrument in writing, submit to the decision of 1 or more arbitrators, any controversy existing between them, which might be the subject of a civil action, except as herein otherwise provided, and may, in such submission, *agree that a judgment of any circuit court shall be rendered upon the award made pursuant to such submission.*

"(2) A provision in a written contract to settle by arbitration under this chapter, a controversy thereafter arising between the parties to the contract, with relation thereto, *and in which it is agreed that a judgment of any circuit court may be rendered upon the award made pursuant to such agreement,* shall be valid, enforceable and irrevocable save upon such grounds as exist at law or in equity for the recission or revocation of any contract." MCLA 600.5001; MSA 27A.5001 (Emphasis added.)

Plaintiff refers us to *Michigan Mutual Liability Co v Graham,* 44 Mich App 406; 205 NW2d 289 (1973), as support for the proposition that any agreement to arbitrate should be construed as a manifestation of the intent of the parties to have their disputes resolved in the manner set forth by statute. The Court deciding *Michigan Mutual* did not face the precise issue confronting us, hence we find the ruling not dispositive. More on point is *McGunn v Hanlin,* 29 Mich 476, 480 (1874), where the Court, interpreting a predecessor statute, held:

"The agreement to submit to arbitration contains no covenant or agreement not to sue, or that the awards shall be made the foundation of a judgment. Without this condition it is a mere common-law arbitration, and enforceable only by action, in case either party fails to comply with it. The statute only refers to such agreements as fix upon some designated court in which judgment shall be entered on the award."

In view of the co-existence of statutory and common-law arbitration, *Frolich v Walbridge-Aldinger Co, supra,* we hold that to avail themselves of the statutory arbitration provisions parties to a contract must clearly evidence that intent by a contract provision for entry of judgment upon the award by a circuit court.

Against this enunciated standard we examine the applicable contract language:

"3.02 *ENGINEER'S DECISIONS:* All claims of the Owner or the Contractor shall be presented to the Engineer for decision. The decision shall be made in writing within a reasonable time. All decisions of the Engineer shall be final except in cases where time and/ or financial considerations are involved, in which case the decision shall be subject to arbitration.

"3.04 *ARBITRATION:* Should there be any dispute or any questioned decision or action by the Owner, the Engineer or the Contractor which involves the application or interpretation of any section of this Contract which is subject to arbitration, it shall be promptly submitted to arbitration upon demand by either party to the dispute. The Contractor shall not delay the work because arbitration proceedings are pending unless he shall have written permission from the Engineer to do so and such delay shall not extend beyond the time when the arbitrators shall have opportunity to determine whether the work shall continue to be suspended pending decision by the arbitrator to such a dispute. Any demand for arbitration shall be in writing and shall be delivered to the Engineer and any adverse party by registered mail addressed to the last known address of each within ten (10) days of receipt of the Engineer's decision, and in no event after final payment has been made and accepted, subject, however, to any express stipulation to the contrary in the Contract Documents. Should the Engineer fail, within a reasonable period, to make a decision, a demand for arbitration may then be made as if the Engineer's decision had been rendered against the party demanding arbitration.

"The arbitrators, if they deem that the case demands it, are authorized to award to the party whose contention is sustained, such sums as they shall deem proper for the expenses incident to the appeal but unless the award of the arbitrators is to the contrary, the reasonable compensation and expenses of the arbitrator shall be shared equally by the parties involved.

"No one shall be qualified to act as an arbitrator who

has, directly or indirectly, any financial interest in the Contractor, who has any business or family relationship with the Owner, the Contractor or the Engineer.

"Each arbitrator selected shall be qualified by experience and knowledge of the work involved in the matter to be submitted to arbitration.

"Arbitration shall be in accord with the procedure and standards of the American Arbitration Association."

The pertinent portion of the contract makes apparent, and plaintiff for the most part concedes, that there is no explicit resort to the statute, its substantive law or its procedures. Plaintiff claims however, that the final sentence, "Arbitration shall be in accord with the procedure and standards of the American Arbitration Association", serves to incorporate by reference the applicable AAA rules. It is claimed that the rules contain the necessary adversion to entry of judgment on the award.

Although we can find no Michigan authority, the question has been decided in California and in the Federal Court system. In *Kustom Kraft Homes v Leivenstein,* 14 Cal App 3d 805, 811; 92 Cal Rptr 650, 654 (1971), the court held that a clause similar to that here in issue, "did import into the contract the entire scheme for arbitration as established by the rules of the American Arbitration Association". The same result was reached in *Burger Chef Systems, Inc v Baldwin Incorporated,* 365 F Supp 1229, 1232 (SD NY, 1973). We agree.

Plaintiff claims that Sections 39, 41 and 44 of the Construction Industry Arbitration Rules provide for entry of judgment on the award. Section 39 prohibits communication with the arbitrator other than at hearings and provides the methods acceptable for serving notices. Section 41 (Form of

Award) provides that the award "shall be executed in the manner required by law". Section 44 (Delivery of Award to Parties) deems "the filing of the award in any manner which may be prescribed by law" to be proper legal delivery of the award. Execution of or filing an award as required or prescribed by law can apply as much to common-law as to statutory arbitrations. We hold that Sections 39, 41 and 44 do not provide the language necessary to satisfy the statutory requirement for entry of judgment on the award.

The court in *Varley v Tarrytown Associates, Inc,* 477 F2d 208, 210 (CA 2, 1973), faced an identical issue involving the United States Arbitration Act, 9 USC 1 *et seq.,* and Section 39 of the Arbitration Rules. We agree with the *Varley* court's resolution of the issue:

"The Act provides that confirmation of an arbitration award is appropriate only where the parties 'in their agreement have agreed that a judgment of the court shall be entered upon the award * * * ' 9 USC 9. There was no such explicit agreement here but only a clause providing for the settlement of controversies by arbitration pursuant to the rules of the American Arbitration Association. While this is sufficient to incorporate the rules into the agreement, *Reed & Martin, Inc v Westinghouse Elec Corp,* 439 F2d 1268 (CA 2, 1971); AAA Commercial Arbitration Rules § 1, there is nothing in the rules which indicates that the parties thereby consented to the entry of judgment upon an award.

"Varley relies upon § 39(b) of the Arbitration Rules which provides:

" 'Each party to an agreement which provides for arbitration under these Rules shall be deemed to have consented that any papers, notices or process necessary or proper for the initiation or continuation of an arbitration under these Rules and for any court action in connection therewith or for the entry of judgment on any award made thereunder may be served upon such

party by mail addressed to such party or his attorney at his last known address or by personal service, within or without the state wherein the arbitration is to be held (whether such party be within or without the United States of America), provided that reasonable opportunity to be heard with regard thereto has been granted such party.'

"We construe this simply as a consent to the service of process which is necessary if a court is to obtain jurisdiction over a non-resident party. See, *e.g., Reed & Martin, Inc v Westinghouse Elec Corp, supra,* 439 F2d at 1276–1277; *Mulcahy v Whitehill,* 48 F Supp 917 (D Mass, 1943). However, to be effective here the parties must have further agreed that judgment shall be entered upon the award. The American Arbitration Association itself recommends the following arbitration clause for insertion in all commercial contracts:

" 'Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration in accordance with the Rules of the American Arbitration Association, and judgment upon the award rendered by the Arbitrator(s) may be entered in any Court having jurisdiction thereof.'

"This language is persuasive that the Association itself does not consider a mere reference to its Rules sufficient to act as a consent to the entry of a judgment by the Court."

We affirm the trial judge's order granting summary judgment to defendant-appellee denying confirmation of the award as a statutory arbitration.

## V

### *Common-law arbitration*

We must now consider the legal consequences of this common-law arbitration agreement. Defendant claims that a common-law agreement to arbitrate is revocable at will by either party prior to award and that defendant in fact exercised the

power to revoke. Plaintiff claims that defendant did not in fact revoke the agreement to arbitrate or the authority of the arbitrators. Moreover, claims plaintiff, the county lacked the legal authority to revoke, (a) as a general matter of law; (b) because this was a construction contract; (c) because this was a "contract evidencing a transaction involving [interstate] commerce", hence governed by 9 USC 2 which makes an arbitration agreement irrevocable; and, (d) because defendant is estopped to assert revocation by its participation in the arbitration process and delay in making objection.

Defendant contends that the county's action in declaring the contract terminated resulted in the revocation of the authority of the arbitrators and the cancellation of the arbitration clause. That contention was rejected in *Aster v Jack Aloff Co,* 190 Pa Super 615; 155 A2d 627 (1959), a case bearing remarkable factual similarities to the instant case. Accord, *Riess v Murchison,* 384 F2d 727; 32 ALR3d 363 (CA 9, 1967), and Anno: *Breach or Repudiation of Contract as Affecting Right to Enforce Arbitration Clause Therein,* 32 ALR3d 377, §§ 14a, 20 and 21a, pp 399–402, 410–413.

Defendant also urges that Tripp was in fact in breach of the contract and reasonable grounds for termination existed. In support of the claimed breach defendant cites the arbitration hearing record, in which it did not participate, and one of the General Conditions of the contract requiring written permission from the engineer for the contractor to delay the work. Defendant omits reference to General Condition requirements to fix compensation and to submit disputes to arbitration. There is no lower court finding on this issue and we do not consider it. On this issue the

validity of the declaration of termination by defendant is involved. In this situation, we subscribe to the principle noted in *Ehrhart & Associates, Inc v Superior Court,* 185 Cal App 2d 1, 6; 7 Cal Rptr 844, 847 (1960), quoting 3 ALR2d 425:

" '[A] party claiming to rescind a contract, including an arbitration clause therein contained, because of a breach or asserted breach of the contract by the other party or for similar cause arising out of acts of the parties themselves, cannot, by setting up such claim for rescission or to rescind at the time when his opponent seeks to compel arbitration in accordance with such clause, eliminate it or obviate its effect.' "

There is no claim of revocation by operation of law. See 5 Am Jur 2d, Arbitration and Award, §§ 46–47, pp 553–555, and 6 CJS, Arbitration and Award, § 34, pp 177–179, for situations where the occurrence of an intervening event has the legal effect of revoking the submission.

As to what constitutes express revocation, 5 Am Jur 2d, Arbitration and Award, § 45, p 553, states:

"If [revocation is] express, it is made by a party, and while no particular form of words is required, the intention to revoke must be made clear and the revocation must be unequivocal. Except in those cases where there has been a revocation of the agreement by implication of law, a revocation of a common-law agreement to arbitrate must be express, and to make the revocation complete notice thereof must be given to the arbitrators."

We agree with defendant county that, historically, common-law arbitration agreements could be revoked or repudiated at will by a party any time prior to announcement of the award. Specific performance of the arbitration agreement would not

be ordered by the courts and the only remedy for an aggrieved party was to seek damages. Pomeroy, *Specific Performance of Contracts* (3d Ed), § 21, pp 58–59 (1926); Grismore, *Law of Contracts*, (Rev Ed), § 289, p 496 (1965); 6A Corbin on Contracts, §§ 1431–1444, pp 381–476; 135 ALR 79; *Restatement of Contracts*, § 550, p 1055; 5 Am Jur 2d, Arbitration and Award, §§ 19, 32, 38 and 39, pp 534, 545, 549; 6 CJS, Arbitration and Award, § 33a, pp 173–174. This rule was followed by Mr. Justice Brandeis in *Red Cross Line v Atlantic Fruit Co*, 264 US 109; 44 S Ct 274; 68 L Ed 582 (1924).

An excellent discussion of the policy underlying the rule is found in *Rueda v Union Pacific R Co*, 180 Ore 133; 175 P2d 778 (1946). The most widely espoused justification for the rule is that specific enforcement of an arbitration agreement improperly ousts the courts of jurisdiction. Attempts by contract to foreclose judicial inquiry were against public policy. Litigants were not then faced with today's overburdened dockets and the consequent sometimes outrageous delays.

Criticism of the unilateral revocation rule has mushroomed. See *Martin v Vansant*, 99 Wash 106; 168 P 990 (1917), *Delaware & Hudson R Co v Williams*, 129 F2d 11 (CA 7, 1942), *Barnhart v Civil Service Employees Insurance Co*, 16 Utah 2d 223; 398 P2d 873 (1965), *Latter v Holsum Bread Co*, 108 Utah 364; 160 P2d 421, 423 (1945) (concurrance by Wolfe, J.). Two states, Minnesota and Nevada, have gone so far as to judicially hold that a common-law arbitration agreement is irrevocable. *Park Construction Co v Independent School District*, 209 Minn 182; 296 NW 475 (1941), *United Association of Journeymen and Apprentices of Plumbing, etc v Stine*, 76 Nev 189; 351 P2d 965 (1960). Other states, including New York, have, in

much the same way as the United States Arbitration Act, legislatively made arbitration agreements irrevocable. Those further interested in the history of arbitration agreements are referred to the excellent discussion in *Kulukundis Shipping Co v Amtorg Trading Corp,* 126 F2d 978 (CA 2, 1942).

In this state, our Supreme Court has made what appear to be inconsistent pronouncements on the issue. In *Chippewa Lumber Co v Phenix Insurance Co,* 80 Mich 116, 120; 44 NW 1055 (1890), the Court said:

"It is conceded that an agreement to submit *all* matters in controversy between parties to arbitration, and thus oust courts of their jurisdiction, is void, and may be repudiated by either party at any time before award is made. Either party to an arbitration may revoke the authority of the arbitrator, and this he may do notwithstanding the agreement to arbitrate is valid."

In *Norton v Hayden,* 109 Mich 682, 685; 67 NW 909 (1896), the Court recited plaintiff's claim "that this submission, being at the common law, was revocable thereafter by either party, and enforceable only by action". The Court answered:

"We are unable to agree with this contention. We must construe the contract as the parties have made it. The arbitration agreed upon was just as much a part of the contract as was the agreement on the part of one to sell and of the other to buy. Mr. Hayden did not agree to buy Mr. Norton's interest, and to pay what a jury or court might find that he ought to pay, or what his interest might be worth. He agreed to take the property, and assume all the liabilities of the firm, upon condition that certain arbitrators, agreed upon, should determine what, if anything, he should pay Mr. Norton. It is too obvious to require further comment that Mr. Norton could not, at his will, revoke the arbitration,

and hold Mr. Hayden liable upon the remainder of the contract."

We then have a series of "condition precedent" holdings where, if the contract language requires arbitration as a condition precedent to bringing suit, the failure to arbitrate results in dismissal. *Chippewa Lumber Co v Phenix Insurance Co, supra, National Home B & L Association v Dwelling House Insurance Co,* 106 Mich 236; 64 NW 21 (1895), *Baumgarth v Firemen's Fund Insurance Co,* 152 Mich 479; 116 NW 449 (1908), *Ripley v Lucas,* 267 Mich 682; 255 NW 356 (1934). In effect then, an agreement to arbitrate, when arbitration is made a condition precedent, *is* specifically enforceable and serves to oust courts of jurisdiction.

Other cases distinguish arbitration agreements from appraisements (agreements that a third party shall determine the value of a claim or property). Appraisement agreements are given effect in Michigan. *Noble v Grandin,* 125 Mich 383; 84 NW 465 (1900), *Weggner v Greenstine,* 114 Mich 310; 72 NW 170 (1897).

In *Stadel v Granger Brothers, Inc,* 4 Mich App 250, 259; 144 NW2d 609 (1966), we cited with approval *Greenwich Marine, Inc v S S Alexandria,* 225 F Supp 671 (SD NY, 1964), as follows:

" 'It is "Federal policy to construe liberally arbitration clauses, to find that they cover disputes reasonably contemplated by this language, and to resolve doubts in favor of arbitration".' "

The heavily case-loaded courts are no longer jealous of their jurisdiction. Where the parties, by a fair agreement, have adopted a speedy and inexpensive means by which to have their disagree-

ments adjusted, we see no public policy reasons for the courts to stand in their way. On the contrary we have a clear expression of public policy in the legislative enactments which provide for statutory arbitration.

Both *Morrison Department Store Co v Lewis,* 96 W Va 277, 290; 122 SE 747, 752 (1924), and *Ames Canning Co v Dexter Seed Co,* 195 Iowa 1285, 1290–1291; 190 NW 167, 170 (1922), treated the issue of whether certain notices were sufficiently clear and unequivocal to expressly revoke the submission. Although neither case was decided on this ground, the language of the opinions is indicative of the type of judicial scrutiny given to a purported notice of revocation. The Court in *Morrison* said:

"It [the purported notice of revocation] does not mention the revocation of the arbitration clause of the contract, nor does it express any intention to revoke the submission or the authority of the arbitrators. The notice denies the authority and jurisdiction of the arbitration but expresses no intention of revoking their authority."

The *Ames* Court noted:

"[T]he notice * * * does not, in terms, revoke the agreement. * * * On its face, it goes no further than to protest against further proceedings by Kelley and Gorman [two of the three arbitrators], without representation of appellants on the board, and to declare their intention to refuse to be bound by any award made by Kelley and Gorman. The notices were evidently prepared upon the theory that the agreement was irrevocable. The expressed desire of the parties was not that the agreement be revoked or abrogated, but that no further proceedings be taken thereunder until appellants were represented on the board."

The claimed notice of revocation in the June 11, 1972 letter is significant in three respects. First, the word "revocation" is not used. If the county intended to revoke the submission to and the authority of the arbitrators as it now claims, the one word precisely stating that intent was not used. Second, the references to the county's unilateral termination of the contract and its stated position that acts of Tripp constituted waiver of Tripp's right to arbitrate, indicate a mistaken impression that those factors served to nullify the arbitration clause. The references do not evidence the exercise of a claimed right of unilateral revocation. Third, the county's three listed "reasons" for asking the arbitrators to "cease and desist" do not include as a reason the county's exercise of a right to revoke. The most obvious conclusion to be drawn from the letter is that the county wished the AAA Administrator to decide whether or not to abort the proceedings.

The conclusion flows from the enumeration of the "reasons". It flows also from the paragraph offering information in support of the reasons (which is inconsistent with the exercise of an unqualified right to revoke without reason). The penultimate paragraph of the letter contemplates that the AAA decide the validity of the reasons expressed ("In the event that your office should determine" and "I would appreciate being advised of your official position"). The request "that we be notified of any hearing dates scheduled" belies the present claim of revocation. The letter was not intended as an unequivocal instrument which would terminate the proceedings.

Other factors, outside the four corners of the letter, indicate that it was not the intention of defendant to revoke the submission. For example,

no copy of the letter was sent to plaintiff. Defendant attempts to justify this by citing Rule 39 of the Construction Industry Arbitration Rules. This rule provides "There shall be no communication between the parties and an Arbitrator other than at oral hearings". The rule prohibits either party from communicating with an arbitrator; it does not prohibit communication between parties.

Defendant's behavior after receiving AAA's response is also indicative of its intent. The AAA responded by notifying defendant that the proceedings would continue "unless otherwise requested by both parties or unless the moving party is stayed by court order". Defendant made no attempt to secure an injunction and did not otherwise answer the AAA. If it was defendant's intent to revoke the authority of the arbitrators, one would expect further action in the nature of an order to show cause why the arbitration proceedings should not be stayed.

Defendant's actions as well as its words are not consonant with its claim to effect a clear unambiguous revocation of a common-law arbitration clause. We hold that defendant did not in fact exercise any such right.

The construction industry provided fruitful soil for the growth of arbitration. Many states, Michigan included, recognized construction arbitration clauses as excluded from the doctrine of revocability. See *Siewek v F Joseph Lamb Co,* 257 Mich 670, 676; 241 NW 807 (1932), and *Detroit v A W Kutsche & Co,* 309 Mich 700, 708; 16 NW2d 128 (1944). The Court held that "where the contract is one for construction, paving, or installation", the agreement "came within one of the exceptions to the general rule that an arbitration agreement is not a bar to action". Arbitration in the construction contract setting became irrevocable.

Since we have determined that there was no revocation in fact, we need not ground our decision on the construction contract "exception". This exception seems to have found its way into Michigan case law without benefit of a detailed reasoned analysis and we therefore note the cases without relying on the rule in our decision.

Likewise, we need not reach plaintiff's further contention that the question of revocability was governed by the United States Arbitration Act and that defendant is estopped from urging revocation.

## VI

### *Jurisdiction of the arbitrators*

We now consider if the arbitration procedure followed by the three-man panel may successfully withstand the county's attack. It is defendant-appellee's claim that, even if the arbitration clause was binding, the arbitrators exceeded its scope and the award is therefore wholly or partially invalid. The grounds for a frontal attack on the proceedings are set forth in *Frazier v Ford Motor Co,* 364 Mich 648, 655; 112 NW2d 80, 84 (1961):

"(1) fraud on the part of the arbitrator; (2) fraud or misconduct of the parties affecting the result; (3) gross unfairness in the conduct of the proceeding; (4) want of jurisdiction in the arbitrator; (5) violation of public policy; (6) want of entirety in the award."

Defendant's claim that its absence from the arbitration hearing vitiates the award is not well taken. Section 29 of the AAA rules provides in pertinent part:

"Unless the law provides to the contrary, the arbitration may proceed in the absence of any party, who,

after due notice, fails to be present or fails to obtain an adjournment."

As was said in *Battle v General Cellulose Co,* 23 NJ 538; 129 A2d 865, 868 (1957):

"If he [the party objecting to arbitration] chooses to ignore the arbitration and await an action upon the award, he takes the risk of a determination that he was obligated to arbitrate and hence is bound by the award."

Defendant's contention that the arbitrators made errors of law and fact and that they used legally incorrect measures of damages is not sustainable. In *Werner v Travelers Indemnity Co,* 55 Mich App 390, 394; 222 NW2d 254, 257 (1974), we recognized that "an award will not be held invalid under the common law merely because it is unjust, inadequate, excessive, or contrary to law". Since the arbitrators are authorized to determine both facts and law, the law will not inquire as to whether the determinations are right or wrong. 6 CJS, Arbitration and Award, § 95, pp 240–241; 5 Am Jur 2d, Arbitration and Award, § 167, pp 643–644.

The sole claim of defendant warranting further discussion is that the arbitrators exceeded the scope of the agreement.

The rule is explained in *Stowe v Mutual Home Builders Corp,* 252 Mich 492, 497; 233 NW 391, 392 (1930):

"Arbitrators derive all their power and authority from the law. The agreement of arbitration entered into between the parties is the law of the case. An award based upon the agreement of arbitration must stand, in the absence of fraud or mistake, but an arbitrary award outside of the scope of the agreement of arbitration is

not binding upon anyone, because it has no legal sanction."

We turn to the General Conditions of the contract. Section 6.03:

*"CHANGES IN THE WORK:* The Engineer may, with the approval of the Owner, as the need arises, order changes in the work in the form of Change Orders without invalidating the Contract. Compensation and the time of completion affected by the Change Orders shall be adjusted at the time of ordering such changes. (See Paragraph 7.05 for payment.)

"If the Contractor claims that any instructions by drawings or otherwise involve extra costs under the Contract, he shall give the Engineer written notice thereof within ten (10) days after receipt of such instructions and in any event before proceeding to execute the work, except in emergency endangering life and property."

Section 3.02:

*"ENGINEER'S DECISION:* All claims of the Owner or the Contractor shall be presented to the Engineer for decision. The decision shall be made in writing within a reasonable time. All decisions of the Engineer shall be final except in cases where time and/or financial considerations are involved, in which case the decision shall be subject to arbitration."

Section 3.04:

*"ARBITRATION:* Should there be any dispute or any questioned decision or action by the Owner, the Engineer or the Contractor which involves the application or interpretation of any section of this Contract which is subject to arbitration, it shall be promptly submitted to arbitration upon demand by either party to the dispute. * * * Should the Engineer fail, within a reasonable period, to make a decision, a demand for arbi-

tration may then be made as if the Engineer's decision had been rendered against the party demanding arbitration."

Construing these sections together, it can be seen that the contractor is entitled to additional compensation for costs caused by change orders. He is to submit the claims to the engineer. It is evident that the amount of compensation is a "financial consideration" triggering the second sentence of section 3.02, "[W]here time and/or financial considerations are involved, * * * the decision shall be subject to arbitration." We hold that the question of the amount of compensation due Tripp because of the rerouting and all things consequential thereto was arbitrable.

Defendant's contention that the arbitrators improperly failed to utilize the contract-required method of computing change-order compensation must also fail. Section 7.05 of the General Conditions provides:

"*PAYMENT FOR CHANGE ORDERS:* Change Orders shall specify any extension of the contract time and one of the following methods of payment:

"(a) Unit prices or combinations of unit prices which formed the basis of the original contract.

"(b) Supplemental proposal giving an amended schedule of prices covering the additional items of work.

"(c) A lump sum based on the Contractor's estimate, approved by the Engineer, and accepted by the Owner.

"(d) A 'Cost-plus' basis, defined as the cost of labor and documented cost of fringe benefits, materials and equipment rental, plus 15% of said cost to cover superintendence, general overhead and profit. Extra work performed by Subcontractors shall be computed as above plus a 10% allowance to the General Contractor."

The change-orders did not all, by their terms,

restrict payment to "unit prices" [7.05(a)] or "cost-plus" [7.05(d)]. Throughout the negotiations, the parties attempted to arrive at a mutually acceptable "fair" sum, implicitly adopting the methods of compensation provided for in the more flexible language of 7.05(b) and 7.05(c). We believe that the arbitration clause is broad enough to authorize the arbitrators to determine a fair "lump sum" or "supplementary proposal" amount to compensate the contractor for additional expenses caused by the rerouting.

A more difficult question arises as to the plaintiff's claim for damages for the county's claimed breach of contract in firing the plaintiff.

The apparent reason for including the arbitration clause was to allow the work to proceed pending resolution of disputes. Various sections of the General Conditions manifest this intent, and recognition of that intent provides guidance as we attempt to discern whether the parties intended the termination issue to be arbitrable. Unlike a change order, notice of termination ends performance under the contract. Arbitration then ceases to have its intended function.

Arbitration, under section 3.04 of the General Conditions, may be demanded where there is "any questioned decision or action * * * which involves the application or interpretation of any section of this Contract". Whether to terminate, breach, or repudiate the contract is a unilateral decision which a party, for whatever reasons it finds persuasive, may make, subject to the attendant peril of responding in damages. It is not, as such, a negotiable decision. It does not involve "application or interpretation", it involves the very vitality of the contract.

As to the experience required of arbitrators Section 3.04 of the General Conditions provides:

"Each arbitrator selected shall be qualified by experience and knowledge of the work involved in the matter to be submitted to arbitration."

We believe that the authority of the arbitrators extended only to their areas of expertise, the construction industry. They may not have been especially qualified to resolve complex legal contract issues; nor, do we believe, were they intended by the parties to resolve such issues.

The arbitrators exceeded the scope of their authority in passing on and awarding damages for the element of breach of contract. It is apparent from the award itself and testimony at the arbitration hearing, that some portion of the $870,565.10 awarded includes damages for breach of contract. Nowhere is the wisdom of what was said in *Detroit Demolition Corp v Burroughs Corp,* 50 Mich App 129, 130; 212 NW2d 827, 828 (1973), *reversed on other grounds,* 392 Mich 769 (1974), more apparent:

"For the guidance of those involved in arbitration proceedings in the future we strongly suggest that the appellate process would be greatly assisted if an arbitrator in deciding multiple claims addressed himself to each claim individually rather than rendering a blanket award."

Defendant claims that since the award was not itemized, it is totally invalid. It is said in 6 CJS, Arbitration and Award, § 109(b), p 257:

"Although, as noted above, a court of equity cannot usurp the functions of the arbitrators or substitute its judgment for theirs, yet, where the mistake or error relied on is clear and the correct result which should have been reached but for the mistake or error can be readily ascertained without infringing on the functions of the arbitrators, equity may, instead of setting the

award aside, rectify the error and decree performance according to the true intent; and, where the matter on account of which relief is sought affects only a part of the award which is readily separable from the remainder, it is often held that the court need not set the award aside in toto but may merely correct it and uphold it in so far as it is proper or correct."

In 6 CJS, Arbitration and Award, § 113(b), p 264, it is said:

"Awards have accordingly been held subject to recommittal for more specific findings, or to allow the arbitrators to find separately upon the matters submitted where such findings are necessary to the justice of the case, or to pass upon matters embraced in the submission but omitted from the award."

The same principle was followed in *Carr v Kalamazoo Vegetable Parchment Co,* 354 Mich 327, 332; 92 NW2d 295, 296 (1958). There, the Court, without invalidating the entire award, said that "the arbitrator's readily severable appendage * * * must be regarded as a nullity". We believe that the damage award for breach of contract is severable from the entire award. The appellant contractor's various claims were meticulously particularized at the hearing. We roughly totalled the itemized claims at $1,214,138 (appellant's brief says Tripp offered proof of damages in the sum of $1,300,000). One particular claim which strikes us as suspicious is for "Loss of bonding capacity $300,000". We are not suggesting that this was included in the award. We don't know—but the arbitrators undoubtedly do. The remedy we choose is suggested by GCR 1963, 769.8 and 769.9(3). In regard to a statutory arbitration, it is contemplated that the reviewing court modify the award

or order rehearing before the arbitrators who made the award. We order recommittal to the arbitrators for specific findings differentiating damages awarded for breach of contract, if any, from damages found causally connected to rerouting change orders.

The order granting summary judgment on Count I (statutory arbitration) is affirmed. Resolution of Count II (common-law arbitration) is held in abeyance pending recommittal to the original arbitrators. If they are unable to apportion the award between compensation for rerouting and compensation for the termination of the contract, the order granting summary judgment on Count II shall stand. If the arbitrators are able to apportion the award, that portion which is compensation for damages caused by the change orders shall be confirmed by the trial court and judgment in favor of appellant entered on Count II. Claimed elements of damage not thereby included in judgment on Count II shall proceed to trial on Count III.

Affirmed as modified. No costs, neither party having prevailed in full.