80 116
114 314

80 116
s44NW1055
d131 4 39

80 116
d135 1 13

80 116
137 4526

80 116
152 2483

# THE CHIPPEWA LUMBER COMPANY v. THE PHENIX INSURANCE COMPANY.

*Fire insurance—Amount of loss—Agreement to arbitrate as condition precedent to bringing suit—Waiver—Damages.*

1. An insurance policy covering a stock of lumber contained an agreement to submit the amount of " loss or damage," in case of fire, to arbitration (the arbitrators not being named), payable only when so ascertained, which arbitration was made a condition precedent to bringing suit; and it is held that the agreement was reasonable and legal, and enforcible whether the loss was *total* or *partial.*

2. An insurance policy on a stock of lumber contained an agreement for arbitration as to the *amount* of loss, which was limited to the actual cost of producing the lumber destroyed. On receiving proofs of loss the company promptly informed the assured by letter that it disputed the *amount* of loss claimed in the proofs, and insisted that it be estimated under the contract, whereupon the assured at once brought suit; and it is held that the letter, if not a demand for, was not a waiver of, arbitration.

3. An insurance policy provided that in the event of loss the measure of damages should in no case exceed the actual cost of producing the lumber destroyed, which provision is construed as follows:

   *a*—If the assured bought the *logs*, he can recover the price paid, with interest from date of purchase, and the cost of manufacturing and storing.

   *b*—If he purchased the *stumpage*, such recovery is limited to the price paid, with like interest, and the other costs added.

   *c*—If he owned the lands from which the logs were cut, he can recover the fair value of the stumpage, with the other costs added, and interest.

4. The following general propositions are summarized from the opinion of Mr. Justice GRANT:

   *a*—Courts must interpret and give effect to contracts according to the clear intent of the parties as expressed in the writings they have deliberately executed.

   *b*—An agreement to submit *all* matters in controversy between parties to arbitration, and thus oust courts of their

jurisdiction, is void, and may be repudiated by either party at any time before an award is made.

*c*—Either party to an arbitration may revoke the authority of the arbitrator, and this he may do notwithstanding the agreement to arbitrate is valid.

*d*—The case of *Nurney v. Insurance Co.*, 63 Mich. 633, is not understood as holding that an agreement to submit the ascertainment of unliquidated damages to arbitration, as a condition precedent to bringing suit, is invalid, or that either party thereto can revoke it at his own will; but that the right to such arbitration, upon the facts in that case, was waived, which waiver necessarily left the parties in the same situation as if no such agreement had been made, which is understood to be the doctrine of that case; and, if it was intended to establish a different rule, it is hereby expressly overruled.

*e*—A debtor waives no rights by his silence when he is not called upon to act.

Error to Mecosta. (Palmer, J.) Argued January 23, 1890. Decided April 11, 1890.

*Assumpsit* on insurance policy. Defendant brings error. Reversed. The facts are stated in the opinion.

*Norris & Norris*, for appellant.

*M. Brown* and *George A. Farr*, for plaintiff.

[The points of counsel are stated in the opinion.— REPORTER.]

GRANT, J. The defendant issued its policy of insurance to the plaintiff, September 1, 1887, insuring, against loss by fire, its stock of lumber, sawed timber, lath, and shingles, for one year, in the amount of $2,500. A fire occurred on May 3, A. D. 1888, consuming the larger part of the stock. The parties failed to agree upon the amount of the loss, and August 24, A. D. 1888, plaintiff brought suit.

The policy contained the following provisions:

"The amount of loss or damage   *   *   *   to be

paid sixty days after the proofs of the same required by the company shall have been made by the assured, and received at the office in Chicago, and the loss shall have been ascertained by the arbitrators appointed, and proved in accordance with the terms and provisions of this policy.     *     *     *     *     *     *     *     *     *

"The amount of sound value and of damage to the property, whether real or personal, covered by this policy, or any part thereof, may be determined by mutual agreement between the company and the assured, or, failing to agree, the same shall then be submitted to competent and impartial arbitrators,—one to be selected by each party,—the two so chosen, in case of disagreement, to select an umpire, to whom they shall refer each subject of difference, and the award of any two of them, in writing, under oath, shall be binding and conclusive as to the amount of such loss or damage, but shall not determine     *     *     *     any other question, except only the amount of such loss or damage.     *     *     *     And until such proofs     *     *     *     are produced,     *     *     * and arbitrations permitted and had, the loss shall not be payable.     *     *     *     *     *     *     *     *     *

"It is furthermore hereby expressly provided and mutually agreed that no suit or action against this company for the recovery of any claim by virtue of this policy shall be sustainable in any court of law or chancery until after an award shall have been obtained fixing the amount of such claim, in the manner above provided, which is agreed to be a condition precedent.     *     *     *

"It is hereby understood and agreed by and between this company and the assured that this policy is made with reference to the foregoing terms and conditions."

Upon receiving notice of the loss, the defendant sent an adjuster, who could not agree with plaintiff upon the amount of the loss or damage sustained.    Thereupon plaintiff made out proofs of loss, and on May 16, 1888, forwarded them by mail to the defendant.    They were received, and on May 22 defendant wrote plaintiff that it had examined the proofs and the information furnished by its adjuster; that its only concern was the amount of loss suffered for which it would be liable to contribute,

and that the amount claimed was excessive. This letter contained the following language:

"We must insist, gentlemen, on estimating the loss under the contract."

It is also stated that defendant understood plaintiff's proofs to include manufacturing and trade profits, which were not covered by the policy.

The provisions of the policy here material to the issue on the question of damages read as follows:

"By this policy of insurance, the Phenix Insurance Company of Brooklyn, N. Y.,    *    *    *    will indemnify the Chippewa Lumber Company against loss or damage by fire to the following specified and located property only, to an amount not exceeding the actual cash value of the property herein described at the time of such loss, and in no event to exceed twenty-five hundred dollars.    *    *    *    *    *    *    *    *    *    *    "The cash value of property destroyed or damaged by fire shall in no case exceed what would be the cost to the assured, at the time of the fire, of replacing the same; and, in the event of any claim for loss being made under this policy on the stock of any manufacturing establishment, the measure of damage shall in no case exceed the actual cost of producing the same."

It is conceded that the loss was on the stock of a manufacturing establishment.

After the letter of May 22, nothing appears to have been done by either party until the suit was brought. Upon the trial, plaintiff confined its evidence of damage to the market or cash value of the lumber destroyed; the defendant introducing no evidence of value. The court was requested to instruct the jury to find a verdict for defendant because—

1. No cause of action existed at the time suit was begun.

2. There was no evidence of plaintiff's damages according to the conditions of the policy.

The circuit judge refused to so charge, and directed a verdict for plaintiff for $2,529.58.

The contention of plaintiff is that the arbitration clause is not a condition precedent to bringing suit; that it is revocable, and plaintiff revoked it by bringing suit; that defendant waived it; that it has no application to a total loss; and that the market value of the lumber is the measure of recovery.

1. Courts must interpret and give effect to contracts according to the clear intent of the parties as expressed in the writings they have deliberately executed. Applying this rule, we find no difficulty in determining upon what the minds of the parties met in making this contract of insurance. They agreed to submit the amount of loss or damage to arbitration; that it should be payable only after it had been so ascertained; that such arbitration should be a condition precedent to bringing suit; and that, in the event of loss, the measure of damages should in no case exceed the actual cost of producing the property destroyed. No other construction can be seriously contended for. There is no vagueness, uncertainty, or ambiguity in the terms of the policy.

It is conceded that an agreement to submit *all* matters in controversy between parties to arbitration, and thus oust courts of their jurisdiction, is void, and may be repudiated by either party at any time before award is made. Either party to an arbitration may revoke the authority of the arbitrator, and this he may do notwithstanding the agreement to arbitrate is valid. Any person may violate the most solemn contract he has made, but he thereby becomes responsible to the injured party for such violation. So, in the numerous cases cited by plaintiff's counsel, the courts held that those who had violated their contract to arbitrate where liable on their arbitra-

tion bonds. But *non constat* that parties may not agree to submit the question of unliquidated damages to arbitration as a condition precedent to bringing suit. Plaintiff and defendant deliberately agreed to this method of ascertaining the damages. It was an expeditious, inexpensive, and proper method, if not a better one than is afforded by a suit. It was certainly as advantageous to one as to the other. They deliberately provided a pen-. alty for failure to comply with this obligation. If plaintiff refused compliance, then it could not bring suit. If defendant refused compliance, then suit could be brought against it immediately. We hold the agreement reasonable and legal. It is sustained by the clear weight of authority. *Canal Co. v. Coal Co.*, 50 N. Y. 252; *Wolff v. Insurance Co.*, 50 N. J. Law, 453; *Dry-dock Co. v. Union Assurance Co.*, 66 Cal. 253 (5 Pac. Rep. 232); *Davenport v. Insurance Co.*, 10 Daly, 535; *Gauche v. Insurance Co.*, 4 Woods, 102; *Carroll v. Insurance Co.*, 72 Cal. 297; *Holmes v. Richet*, 56 Id. 307; *Scott v. Avery*, 8 Welsby, H. & G. 487; *Insurance Co. v. Creighton*, 51 Ga. 95; *U. S. v. Robeson*, 9 Pet. 319; *Lovejoy v. Insurance Co.*, 11 Ins. Law J. 186; Wood, Fire Ins. § 493; *Gasser v. Sun Fire Office*, 44 N. W. Rep. 252.

It is true that some courts have held that similar arbitration clauses, providing for the ascertainment of the amount of loss, were not binding; but we think it will be found that they so decided upon the ground that they were not made a condition precedent to bringing suit. Most of the cases cited by plaintiff's counsel are not in conflict with the rule above stated. In most all,. the attempt was made to oust the court entirely of its jurisdiction; and in the case of *Stephenson v. Insurance Co.*, 54 Me. 70, the court very tersely states the rule as follows:

"While parties may impose, as a condition precedent

to application to the courts, that they shall first have settled the amount to be recovered by an agreed mode, they cannot entirely close the access to the courts of law."

Plaintiff relies upon the case of *Nurney v. Insurance Co.*, 63 Mich. 633 (30 N. W. Rep. 350). That case is very different from this in one important feature, which was evidently the basis of the decision. The contract provided for arbitration at the written request of either party. Their negotiations for settlement covered a period of five months, and neither party claimed the right of arbitration. It was held to have been waived. Justice SHERWOOD (p. 637) said:

"In this case the agreement to arbitrate never became operative; and the agreement not to sue, being dependent on the agreement to arbitrate, of course must have become inoperative."

The policy in the present case provides that the amount of loss or damage *shall be* submitted to arbitration. The right to arbitrate is not made conditional upon a written request of either party. It expressly provides an unobjectionable and fair mode for ascertaining the amount if the parties are unable to agree, upon the ascertainment of which the plaintiff was entitled to bring suit. Interpreting the language in the *Nurney Case* in the light of the facts, we do not understand the Court to hold that an agreement to submit the ascertainment of unliquidated damages to arbitration, as a condition precedent to bringing suit, is not valid, or that either party thereto can revoke it at his own will. A waiver of arbitration necessarily implies a waiver of all the conditions dependent upon it, and leaves the parties in the same situation as they would be in if they had made no agreement to arbitrate. Such we understand to be the doctrine of that case. If it was intended to establish a different rule, we hereby expressly overrule it.

2. The evidence for plaintiff showed that the lumber was all destroyed except about 19,000 feet. Counsel claim that this was, in effect, a total loss, and that therefore the arbitration clause does not apply. The terms "loss" and "damage," as used in the policy, are synonymous, and mean substantially the same thing. Both are included in the agreement to arbitrate, and it makes no difference whether the loss was total or partial. The language of the policy cannot be construed to limit the right of arbitration to a case where the property was damaged, but not destroyed. *Gasser v. Sun Fire Office*, 44 N. W. Rep. 252.

3. The mere silence of the defendant did not constitute a waiver. The defendant was in the position of a debtor; the plaintiff, of a creditor. A debtor waives no right by his silence when he is not called upon to act. The defendant, by letter, promptly informed plaintiff that it disputed the amount of its loss, and demanded an estimation under the contract. Even if this letter was not a demand for arbitration, it certainly constituted no waiver. If it was not, when was the waiver established by its silence? If plaintiff had commenced suit the day after receiving this letter, would it be contended that it had waived its right? In order to establish a waiver, the plaintiff should have moved upon the receipt of this letter, and fastened upon the defendant some acts or conduct from which a waiver might naturally be inferred. It is silence against silence, and neither party is placed thereby in any other or different position than that in which they stood at the beginning.

4. The measure of damages fixed by the parties in their contract was not to exceed the actual cost of producing the lumber destroyed. This was not the market or cash value. The court, therefore, adopted a standard of value in direct conflict with the agreement of the parties. On

this point there can be no room for doubt.   There is no difficulty in making the computation.   If plaintiff bought the logs, the measure of damages would be the price paid, with interest from date of purchase, and cost of manufacture and storing.   If it purchased the stumpage, the measure would be the price of the stumpage, with interest, and the other costs added.   If it owned the lands from which the logs were cut, the measure would be the fair value of the stumpage, with the other costs added, and interest.

The judgment must be reversed, and a new trial ordered.

CHAMPLIN, C. J., MORSE and LONG, JJ., concurred.