TONY ANDRESKI, INC v SKI BRULE, INC

Docket No. 128011. Submitted May 8, 1991, at Marquette. Decided July 22, 1991, at 9:20 A.M. Leave to appeal sought.

Tony Andreski, Inc., brought an action for eviction in the 41st Circuit Court against Ski Brule, Inc., and Iron River National Bank, alleging that Ski Brule failed to comply with a lease provision requiring the maintenance of liability insurance covering the demised premises. Before commencement of the action the plaintiff initiated common-law arbitration pursuant to an arbitration clause in the lease. Following the filing of the suit, and before an arbitration award was announced, the plaintiff expressly revoked in writing the arbitration clause of the lease. The court, John D. Payant, J., dismissed the action, finding that because common-law arbitration principles were applicable to this action, the plaintiff had the right to unilaterally revoke the arbitration clause, but had failed to do so in a timely manner. The plaintiff appealed.

The Court of Appeals *held:*

1. Either party to a common-law arbitration agreement may unilaterally revoke the arbitration agreement at any time before an award, regardless of which party initiated the arbitration. The plaintiff was not estopped from revoking the arbitration agreement, and its revocation of the arbitration agreement was timely.

2. Nullification of the plaintiff's revocation of the arbitration agreement on the basis that the plaintiff failed to notify each of the arbitrators of its revocation is not warranted under the facts of this case.

Reversed and remanded.

GRIFFIN, P.J., concurring, stated that the public policy considerations that favored the allowance of unilateral revocation of common-law arbitration contracts are no longer credible, that modern public policy no longer disfavors enforcing arbitration agreements, and that the policy of unilateral revocation of common-law arbitration contracts should be overruled by the Supreme Court.

*Petrucelli & Petrucelli, P.C. (by Vincent R. Petrucelli),* for Tony Andreski, Inc.

*Steve J. Polich, P.C* (by *Steve J. Polich*), for Ski Brule, Inc.

*Mark D. Tousignant, P.C.* (by *Mark D. Tousignant*), for Iron River National Bank.

Before: GRIFFIN, P.J., and SAWYER and WEAVER, JJ.

SAWYER, J. The trial court granted defendants' motion to dismiss plaintiff's complaint to evict defendant Ski Brule, Inc., under a lease agreement. The trial court's decision was based upon an arbitration clause contained in the lease. Plaintiff appeals, and we reverse.

Plaintiff is the owner of certain real property located in Iron County. On September 7, 1976, plaintiff's predecessor in interest leased the land to Ski Brule for a ten-year term, with options to renew for nine additional ten-year terms. Ski Brule has pledged its leasehold interest as security for repayment of a loan made by defendant Iron River National Bank, which accepted Ski Brule's assignment of the lease.

The instant dispute is based upon plaintiff's allegation that defendants materially breached a provision in the lease requiring the maintenance of sufficient, effective liability insurance on the demised premises. Plaintiff sent defendants a notice that suit would be commenced in sixty days unless the default was cured. At the same time, plaintiff requested that the matter be referred to a "moderation committee" in accordance with paragraph 16 of the lease, which provided for any dispute arising under the lease to be resolved by a moderation committee composed of the managing executives of the Commercial Bank of Stambaugh, The Miners State Bank, and the Iron River Na-

tional Bank of Iron River. A hearing of the moderation committee was scheduled for November 13, 1989, but the hearing was not held because plaintiff did not receive notice of the hearing and did not appear. The committee meeting was rescheduled for December 11, but the hearing was cancelled by Ski Brule because of the unavailability of counsel. Thereafter, plaintiff commenced the instant action and, following the filing of the suit, sent a letter to defendants expressly revoking the arbitration (moderation) clause of the lease.

Following a hearing, the trial court issued an opinion and order that concluded that the common-law principles of arbitration, as opposed to the requirements of statutory arbitration, were applicable to the case at bar, and that under common-law arbitration principles a party has the right to unilaterally revoke an arbitration provision of an agreement. The court, however, also concluded that plaintiff had not timely revoked the arbitration provision and, therefore, was obligated to submit the matter to arbitration (i.e., to the moderation committee).

The trial court's first two conclusions, that this case involves common-law arbitration and that plaintiff had the right to unilaterally revoke the arbitration clause, are not disputed in this appeal.[1] Rather, the only issue before us is whether the trial court correctly concluded that plaintiff had not timely revoked the arbitration clause. The trial court reached its conclusion on the basis that because plaintiff had initiated arbitration proceedings that were already underway, it was estopped

[1] While we do not necessarily disagree with the points expressed in the concurring opinion, we decline to address them because they represent an issue not before us for decision. We agree, however, that common-law arbitration is an area that would benefit from renewed consideration by the Supreme Court.

from thereafter revoking the arbitration clause. We disagree.

The trial court relied upon this Court's decision in *E E Tripp Excavating Contractor, Inc v Jackson Co*, 60 Mich App 221; 230 NW2d 556 (1975), in concluding that an arbitration clause may be unilaterally revoked. The *Tripp* decision does acknowledge that this is the common-law rule, though in that case this Court decided that the defendant had not unambiguously revoked the common-law arbitration clause and, therefore, concluded that the defendant was obligated to arbitrate the dispute. Of more concern to the instant dispute, however, is the fact that, under the common-law principle that either party has a right to revoke an arbitration clause, the right to revoke a common-law arbitration agreement may be exercised by a party at any time before the announcement of an award. *Id.* at 243. Because no award had been made in the case at bar and, in fact, the matter had not yet been heard by the moderation committee, plaintiff still retained the right to revoke the common-law arbitration agreement.

Unlike the trial court, we put no reliance on the fact that it was plaintiff who initiated the arbitration proceeding. We are aware of no authority in support of the trial court's conclusion that the party that initiates arbitration is estopped from thereafter revoking the arbitration agreement. Furthermore, we are not inclined to adopt such a rule. Plaintiff's proffered reasons for revoking the arbitration agreement[2] are suggestive of why a

---

[2] Two basic reasons have been proffered for plaintiff's decision to revoke the arbitration agreement. First, plaintiff has claimed that the arbitration procedure was unviable, apparently in light of the inability to assemble the moderation committee in a reasonable period of time. Plaintiff's letter that expressly revoked the arbitration clause also cites as a reason a basic unfairness in the arbitration clause, in that the banks that provide the members of the moderation commit-

party would initially agree to submit a matter to arbitration and thereafter decide against arbitration.

Specifically, plaintiff's position, if meritorious, is one that requires a speedy resolution, in that plaintiff alleges that defendants have failed to maintain adequate liability insurance and, therefore, plaintiff is conceivably exposed to significant financial losses if adequate liability insurance is not in place. Given the delays accompanied by the arbitration proceedings, it is not unreasonable for plaintiff to have reached the determination that arbitration was not, after all, the most expeditious way to resolve the dispute and protect its interests. While it may ultimately have been more expedient for plaintiff to have continued with arbitration, it nevertheless remains the fact that there can be legitimate reasons why a party, once having agreed to or even initiated the arbitration process, may wish to revoke the arbitration and proceed with litigation. Accordingly, it would be inappropriate to apply the principle of estoppel against a party that initiated arbitration merely because it thereafter concludes that arbitration is no longer consistent with protecting its rights and interests and chooses litigation instead.

Accordingly, we conclude that the common-law rule acknowledged in *Tripp, supra,* is the rule that is most consistent with the rights of the parties involved in a common-law arbitration: either party may, unilaterally, revoke an arbitration agree-

tee have significant financial dealings with Ski Brule. Specifically, according to plaintiff's letter, Ski Brule owes substantial sums of money to all three banks, which could suffer financial losses if Ski Brule loses the arbitration, as well as the fact that Ski Brule's president, Steve Polich, is a member of the board of directors of The Miners State Bank. We also note that one of the banks that is to provide an arbitrator, Iron River National Bank, a defendant herein, has taken an assignment of the lease interest as security for a loan made to Ski Brule.

ment at any time before the announcement of an arbitration award, regardless of which party initiated the arbitration. Therefore, plaintiff's revocation of the arbitration agreement in the case at bar was timely.

Defendant bank also argues that the trial court's decision should be upheld on the basis that plaintiff never properly revoked the arbitration agreement, because the letter revoking the arbitration agreement was not sent to each of the members of the moderation committee. In support of its position, defendant bank relies on *Tripp, supra* at 243, which quoted 5 Am Jur 2d, Arbitration and Award, § 45, p 553, which states that to make revocation of arbitration complete, notice thereof must be given to the arbitrators. We do not agree with defendant's position.

First, even if we accept defendant's position with respect to the requirement that notice of revocation be sent to each arbitrator, that would not support the trial court's conclusion in the case at bar. As discussed above, plaintiff has the right to revoke arbitration at any time before the announcement of an award. Because no arbitration award has been announced by the moderation committee, plaintiff could cure any defect in notice by immediately sending the notice of revocation to each arbitrator before any such award could be announced. Accordingly, to dismiss plaintiff's suit on this basis would be an exercise in futility, because plaintiff could immediately dispatch the appropriate notices and reinstate the suit.[3]

Furthermore, we are not convinced that the appropriate remedy for a failure to notify the

[3] Indeed, for that matter, plaintiff, upon receiving a ruling, could immediately dispatch the notices and then move for rehearing of the dismissal, because the reason for the dismissal would no longer be true.

arbitrators of a revocation of the arbitration is to dismiss the litigation. While, certainly, the arbitrators at some point should be notified, so they need not invest further time in the matter, that is not essential to achieving a revocation as long as the party seeking revocation of arbitration has expressly and unambiguously expressed its intent to revoke the arbitration agreement, such as by notice to the other parties involved and the commencement of a lawsuit. Here, there can be no dispute that plaintiff has expressly and unambiguously renounced the arbitration agreement and decided to proceed with litigation. Furthermore, there is no indication that plaintiff failed to notify the arbitrators in an attempt to allow the arbitrators to make an award and allow plaintiff to thereafter attempt to make a choice between accepting the award or proceeding with litigation. The arbitration proceedings were effectively stopped with the commencement of litigation, and the arbitration proceeded no further. Absent circumstances that suggest that the revoking party did not notify the arbitrators of the revocation of arbitration in order to obtain an inequitable advantage over the opposing party, we see no reason to nullify an otherwise expressed and unambiguous revocation of arbitration because of a failure to notify the arbitrators.[4]

For the above reasons, we conclude that plaintiff could revoke the arbitration agreement at any time before the announcement of an arbitration award by the moderation committee and that plaintiff did, in fact, revoke the agreement to arbitrate. Accordingly, the trial court erred in dismissing plaintiff's complaint.

---

[4] In an appropriate situation, a revoking party might be liable for costs incurred by an opposing party or the arbitrators because of a failure to promptly notify the arbitrators of the revocation. This does not appear to be an issue in the case at bar.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. Plaintiff may tax costs.

WEAVER, J., concurred.

GRIFFIN, P.J. *(concurring).* I write separately to express my disagreement with Michigan's anachronistic doctrine of common-law arbitration that allows the unilateral revocation of common-law arbitration contracts.

An excellent discussion of common-law arbitration is contained in *E E Tripp Excavating Contractor, Inc v Jackson Co,* 60 Mich App 221, 243-245; 230 NW2d 556 (1975), wherein it is noted that historically contracts for arbitration were disfavored. Arbitration contracts were deemed to be against public policy because they operated to oust the courts of their traditional jurisdiction. For this reason, the courts modified normal contract principles to allow a party to unilaterally revoke a contract to arbitrate at any time before the rendering of an arbitration award.

As noted by our Court in *Tripp, supra* at 246-247, the public policy arguments of a century ago are no longer credible in today's world:

> The heavily case-loaded courts are no longer jealous of their jurisdiction. Where the parties, by a fair agreement, have adopted a speedy and inexpensive means by which to have their disagreements adjusted, we see no public policy reasons for the courts to stand in their way. On the contrary we have a clear expression of public policy in the legislative enactments which provide for statutory arbitration.

In the sixteen years since the *Tripp* decision, courts throughout the country have continued to

recognize that modern public policy no longer disfavors enforcing arbitration agreements. See *Anne Arundel Co v Fraternal Order of Anne Arundel Detention Officers,* 313 Md 98, 103-110; 543 A2d 841 (1988) (quoting *Tripp, supra*), *Pettinaro Construction Co, Inc v Harry C Partridge, Jr, & Sons, Inc,* 408 A2d 957 (Del Ch, 1979), and *L H Lacy Co v City of Lubbock,* 559 SW2d 348, 352 (Tex, 1977).

Although the policy of unilateral revocation of common-law arbitration contracts is outdated and unsound, such a rule of law has been well established in Michigan since *Chippewa Lumber Co v Phenix Ins Co,* 80 Mich 116; 44 NW 1055 (1890). While one could argue that the statements in *Chippewa Lumber Co* were mere dicta, the doctrine is too firmly entrenched to be overruled by this intermediate appellate court. I, however, urge the Supreme Court to do so.

In all other respects, I agree with the majority.