Saad, J.
 

 Plaintiffs appeal as of right from an order granting defendants’ motion for summary disposition pursuant to MCR 2.116(C)(7). We affirm.
 

 I. FACTS AND PROCEEDINGS
 

 In 1994, plaintiffs Carolyn and Frank Hetrick filed a medical malpractice suit against defendants, alleging that defendant David Friedman, D.P.M., negligently performed podiatric surgery on Carolyn (1994 action). Blue Cross and Blue Shield (bcbs) intervened as a plaintiff in the 1994 action, asserting a contractual hen against any judgment or settlement for reimbursement of benefits it paid under an insurance pol
 
 *266
 
 icy.
 
 [1]
 
 Subsequently, plaintiffs and defendants agreed to submit plaintiffs’ claims to arbitration, to be conducted pursuant to the rules and procedures of the American Arbitration Association (aaa). Bcbs did not sign the arbitration agreement. The trial court dismissed the 1994 action pursuant to the arbitration agreement, but plaintiffs subsequently tried to reinstate their claims first by moving to set aside the dismissal, then by filing a new action against defendants (1997 action). In response to the 1997 action, defendants maintained that plaintiffs’ action was barred by the arbitration agreement, and moved for summary disposition under MCR 2.116(C)(7). Plaintiffs argued that the agreement provided for common-law arbitration, rather than for statutory arbitration, and that plaintiffs were therefore free to revoke the agreement to arbitrate their claim. The trial court disagreed and granted defendants’ motion, dismissing the 1997 action. Plaintiffs now appeal the dismissal of the 1997 action.
 

 n
 

 This Court reviews a trial court’s grant or denial of a motion for summaiy disposition pursuant to MCR 2.116(C)(7) de novo. We determine whether the moving party was entitled to judgment as a matter of law.
 
 Limbach v Oakland Co Bd of Co Rd Comm’rs,
 
 226 Mich App 389, 395; 573 NW2d 336 (1997).
 

 Plaintiffs contend that the arbitration agreement was not valid because BCBS did not sign the agreement. We disagree. The Michigan Supreme Court has
 
 *267
 
 stated that “a party cannot be required to arbitrate an issue which he has not agreed to submit to arbitration . . . [and] a party cannot be required to arbitrate when it is not legally or factually a party to the agreement.”
 
 St Clair Prosecutor v AFSCME,
 
 425 Mich 204, 223; 388 NW2d 231 (1986); see also
 
 Kaleva-Norman-Dickson School Dist v Kaleva-Norman-Dickson Teachers’ Ass’n,
 
 393 Mich 583; 227 NW2d 500 (1975);
 
 Whitehouse v Hoskins Mfg Co,
 
 113 Mich App 138; 317 NW2d 320 (1982);
 
 DAIIE v Straw,
 
 96 Mich App 773; 293 NW2d 704 (1980). However, plaintiffs’ reliance on these cases is misplaced. None of these cases states that all of the parties to an action must sign an arbitration agreement in order for the agreement to be binding on those parties who did sign it. Instead, these cases stand for the proposition that a party cannot be required to arbitrate an issue that the party has not agreed to submit to arbitration. Because BCBS did not enter into the arbitration agreement, it could not be required to arbitrate any claim it had against defendants.
 
 [2]
 
 However, plaintiffs agreed in writing to submit their claim against defendants to arbitration; thus, they are bound by the arbitration agreement.
 

 m
 

 Plaintiffs also argue that they were entitled to revoke the arbitration agreement because the agree
 
 *268
 
 ment was for “common-law arbitration” rather than for “statutoiy arbitration” We disagree.
 

 This Court distinguishes between “statutory arbitration” and “common-law” arbitration. “The Michigan arbitration statute provides that an agreement to settle a controversy by arbitration under the statute is valid, enforceable, and irrevocable
 
 if the agreement provides that a circuit court can render judgment on the arbitration award.” Tellkamp v Wolverine Mut Ins Co,
 
 219 Mich App 231, 237; 556 NW2d 504 (1996) (emphasis supplied), citing MCL 600.5001; MSA 27A.5001. According to this Court’s interpretation of the Michigan arbitration act (maa),
 
 [3]
 
 parties that want their arbitration agreement to be a statutory arbitration agreement must “ ‘clearly evidence that intent by a contract provision for entry of judgment upon the award by the circuit court.’ ”
 
 Tellkamp, supra,
 
 237, quoting
 
 EE Tripp Excavating Contractor, Inc v Jackson Co,
 
 60 Mich App 221, 237; 230 NW2d 556 (1975). Statutory arbitration agreements are irrevocable except by mutual consent. MCL 600.5011; MSA 27A.5011.
 

 In contrast, if the arbitration agreement does not provide “that judgment shall be entered in accordance with the arbitrators’ decision,” the contract involves common-law arbitration rather than statutory arbitration.
 
 Beattie v Autostyle Plastics, Inc,
 
 217 Mich App 572, 578; 552 NW2d 181 (1996) (citing MCL 600.5001
 
 et seq.;
 
 MSA 27A.5001
 
 et seq.f
 
 Under the “unilateral revocation rule,” when the agreement is for common-law arbitration, either party may unilaterally revoke the arbitration agreement at any time before the
 
 *269
 
 announcement of an award, regardless of which party initiated the arbitration.
 
 Tony Andreski, Inc v Ski Brule, Inc,
 
 190 Mich App 343, 347-348; 475 NW2d 469 (1991).
 

 Here, the arbitration agreement included the provision, “Arbitration to be governed by American Arbitration Association medical malpractice arbitration rules.” The agreement to arbitrate therefore incorporated these rules by reference. Although these rules were not part of the trial court record, we may take judicial notice of these rules pursuant to MRE 201(c) and (e). MRE 201(b) allows us to take judicial notice of a fact that is not subject to reasonable dispute because it is “capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.” The AAA’s medical malpractice arbitration rules satisfy these requirements.
 

 The aaa medical malpractice arbitration rules expressly provide that “[p]arties to these rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof.”
 
 [4]
 
 Because these rules were incorporated by reference into the arbitration agreement, the agreement included a provision for a judgment upon the arbitration award to be entered in a court having jurisdiction. Accordingly, the arbitration agreement is a statutory arbitration agreement and is not unilaterally revocable by plaintiffs. Because defendants did not consent to the revocation of that agreement, the trial court properly
 
 *270
 
 granted summary disposition pursuant to MCR 2.116(C)(7).
 

 IV
 

 Because the arbitration agreement at issue here provided for statutory arbitration, we are not obligated to address the unilateral revocation rule pertaining to common-law arbitration agreements. Nonetheless, we find it regrettable that this Court has perpetuated the anachronistic rule that common-law arbitration agreements are revocable—a rule based on superannuated precedent rather than reasoned analysis of law and public policy. Unhappily, this Court has reiterated this rule in decisions issued after November 1, 1990, which are binding precedent under MCR 7.215(H)(1).
 
 Beattie, supra,
 
 and
 
 Tony Andreski, supra.
 
 If we had been forced to rule that the parties’ contract was for common-law arbitration, and therefore revocable, we would have called for a conflicts panel pursuant to MCR 2.715(H). Reviewing the origins of the rule, we find no sound legal basis for its peipetuation.
 

 The rule allowing unilateral revocation of common-law arbitration agreements has no statutory basis. Nothing in the maa suggests that arbitration agreements not containing the “entry of judgment upon the award” language are revocable at the will of either party. Although the maa expressly provides that statutory agreements are “valid, enforceable and irrevocable save upon such grounds as exist at law or in equity for the rescission or revocation of any contract,” and that neither party may revoke the agreement without the other party’s consent, it does not logically follow that common-law agreements are uni
 
 *271
 
 laterally revocable. MCL 600.5001(2), 600.5011; MSA 27A.5001(2), 27A.5011.
 

 Reviewing the case law history of the unilateral revocation rule, we find no reason why it should still be the law in Michigan. Indeed, its continued existence brings to mind Justice Oliver Wendell Holmes’ quote that “as precedents survive like the clavicle in the cat, long after the use they once served is at an end, and the reason for them has been forgotten, the result of following them must often be failure and confusion from the merely logical point of view.” Holmes,
 
 Common carriers and the common law,
 
 13 American L R 608, 630 (1879). Accordingly, there is no reason for the unilateral revocation rule to persist to this day merely because it appeared in nineteenth century judicial dicta that has no relevance or power of persuasion today.
 

 The origins of the unilateral revocation rule lie in the nineteenth century, when American law disfavored arbitration as second-rate justice at best, or an unlawful usurpation of judicial authority at worst. Although early Michigan arbitration statutes
 
 permitted
 
 adults (except married women) to enter into agreements to submit disputes to arbitration and render judgment upon an arbitration award, until 1942 these statutes did not proscribe revocation or mandate enforcement. See 1948 CL 645.1
 
 et seq.;
 
 1929 CL 15394
 
 et seq.;
 
 1871 CL 6889
 
 et seq.
 
 While our legal system may have had only a lukewarm tolerance for arbitration in the past, it now embraces arbitration as an expeditious, inexpensive, and fair means of dispute resolution. New legislation, implementing the enforceability of arbitration agreements, replaced the older statutes that merely tolerated arbitration as long
 
 *272
 
 as neither party changed his mind. Congress enacted the Federal Arbitration Act in 1925. 9 USC 1. Our Legislature adopted the Uniform Arbitration Act as the MAA in 1961. Meanwhile, the American judiciary abandoned its hostility toward arbitration. See, for example, the United States Supreme Court’s
 
 “Mitsubishi
 
 Trilogy” cases.
 
 [5]
 
 Consistent with the national movement favoring arbitration, Michigan courts have upheld agreements to arbitrate a wide variety of disputes. See
 
 Rembert v Ryan Family Steak Houses, Inc,
 
 235 Mich App 118, 128-130; 596 NW2d 208 (1999). Whatever the rationale for the unilateral revocation rule may have been in the nineteenth century, it is no longer relevant.
 

 Not only is the unilateral revocation rule anachronistic, it has never been a firmly entrenched rule in Michigan case law. When the rule has appeared in Michigan cases, it has been an aberration in our state, which has generally been favorable toward arbitration.
 
 Rembert, supra,
 
 128-133. Our Supreme Court’s nineteenth century decisions
 
 did not
 
 consistently hold that common-law arbitration agreements are revocable whereas statutory agreements are not. In some cases, the Court at least suggested that
 
 either type of arbitration
 
 was revocable at the will of either party (which is arguably consistent with the nineteenth century statute, which did not provide that arbitration agreements were irrevocable). In
 
 McGunn v Hanlin,
 
 29 Mich 475 (1874), the Court held that a common-
 
 *273
 
 law arbitration agreement that did not contain a covenant not to sue could not be enforced.
 
 Id.,
 
 480. However, the Court expressly declined to consider “whether a
 
 statutory
 
 agreement, before the arbitrators have acted, stands on a different basis,” thereby leaving the possibility that even statutory agreements were revocable.
 
 Id.
 
 In
 
 Chippewa Lumber Co v Phenix Ins Co,
 
 80 Mich 116; 44 NW 1055 (1890), the Court broadly stated that arbitration agreements in general are unenforceable—without analysis, without reference to any arbitration statute, and without any distinction between statutory and common-law arbitration.
 
 Id.,
 
 120. Notwithstanding this sweeping declaration, the Court ultimately held that the parties’ arbitration agreement—which utilized arbitration only as a condition precedent to filing a lawsuit—was enforceable.
 
 [6]
 

 Id.,
 
 120-121. Because the Court ultimately enforced the limited arbitration agreement, its statement that an agreement to submit all matters to binding arbitration would have been unenforceable is dicta, not a binding statement of law.
 
 Edelberg v Leco Corp,
 
 236 Mich App 177; 599 NW2d 785 (1999). Moreover, because these cases blurred the distinction between common-law and statutory arbitration agreements, neither case warrants application of the unilateral revocation rule today,, under the MAA.
 

 Moreover, other early decisions
 
 rejected
 
 the unilateral revocation rule. In
 
 Norton v Hayden,
 
 109 Mich 682; 67 NW 909 (1896), the plaintiff argued that he was entitled to revoke a common-law arbitration
 
 *274
 
 agreement. The Supreme Court gainsaid this proposition:
 

 We are unable to agree with this contention [that a common-law arbitration provision in a contract was unenforceable],
 
 We must construe the contract as the parties have made it.
 
 The arbitration agreed upon was just as much a part of the contract as was the agreement on the part of one to sell and of the other to buy. ... It is too obvious to require further comment that Mr. Norton could not, at his will, revoke the arbitration, and hold Mr. Hayden liable upon the remainder of the contract. No case cited sustains any such doctrine. A revocation of the arbitration portion of the contract by either party would have been a revocation on his part of the entire contract.
 
 [Id.,
 
 685 (emphasis added).]
 

 The Supreme Court implicitly rejected the unilateral revocation rule in
 
 Frolich v Walbridge-Aldinger Co,
 
 236 Mich 425, 429; 210 NW 488 (1926). There, the Court stated that the parties’ arbitration agreement was “not in conformity with our statutory requirements (3 Comp Laws 1915, § 13646
 
 et
 
 seq.) and makes no reference to the act,
 
 but in any event it is an agreement for a common-law arbitration.” Frolich, supra,
 
 429 (emphasis added). However, the Court
 
 did not refuse to enforce the arbitration agreement on the ground that a common-law arbitration agreement was revocable by either party.
 
 Instead, the Court held that the plaintiff was entitled to bring a lawsuit because the defendant failed to comply with the arbitration agreement by cooperating with the plaintiff’s effort to arbitrate.
 
 Id.,
 
 432. Indeed, it can be inferred from the
 
 Frolich
 
 decision that the Court would have enforced the parties’ common-law arbitration agreement if the defendant had honored the terms of the agreement.
 

 
 *275
 
 In
 
 Siewek v F Joseph Lamb Co,
 
 257 Mich 670; 241 NW 807 (1932), the Court implicitly distinguished between statutory and common-law arbitration agreements, and stated that the latter were revocable
 
 unless they came under one of two exceptions-,
 
 arbitration as condition precedent to a lawsuit, or arbitration relating to construction, paving, or installation contracts.
 
 [7]
 

 Id.,
 
 676. Again, the Court’s reliance on an obsolete statute and two obsolete exceptions renders its statement of the unilateral revocation rule irrelevant under the MAA and modem, proarbitration public policy.
 
 Rembert, supra,
 
 132-133.
 

 In sum, we trace the origins of the unilateral revocation rule in two decisions allowing for revocation of
 
 any
 
 arbitration agreement, one decision explicitly rejecting the unilateral revocation rule, one decision implicitly rejecting it, and one decision accepting the rule subject to certain exceptions—all decided under a defunct arbitration statute. This history scarcely warrants the continued viability of the unilateral revocation rule as a well-entrenched principle of law.
 
 [8]
 

 Moreover, the unilateral revocation rule is an aberration in Michigan common law, which has generally been favorable toward arbitration. See
 
 Rembert, supra,
 
 128-130. Its appearance in the Supreme Court cases cited seems almost accidental.
 

 Unfortunately, in the MAA era, the unilateral revocation rule reemerged in
 
 EE Tripp, supra.
 
 Without con
 
 *276
 
 sideling the difference between the historical arbitration statute and the maa, the
 
 EE Tripp
 
 Court cited
 
 Frolich, supra,
 
 for the proposition that “to avail themselves of the statutory arbitration provisions parties to a contract must clearly evidence that intent by a contract provision for entry of judgment upon the award by a circuit court.”
 
 EE Tripp, supra,
 
 237. The Court did not mention that the
 
 Frolich
 
 Court found the agreement unenforceable for reasons other than the unilateral revocation rule. Without considering how the maa or modem public policy might have rendered the old rule obsolete, the
 
 EE Tripp
 
 Court stated that “historically, common-law arbitration agreements could be revoked or repudiated at will by a party any time prior to announcement of the award.”
 
 Id.,
 
 243. The Court then discussed the history of this issue in various other jurisdictions, noted the conflict among the Michigan Supreme Court decisions, acknowledged the “mushrooming” criticism of the unilateral revocation rule, but ultimately decided that the unilateral revocation rule remained the law.
 
 Id.,
 
 237, 241-250. Significantly, the Court’s lengthy discussion of the unilateral revocation rule is dicta because it ultimately determined that the defendant had not, in fact, revoked the agreement.
 
 Id.,
 
 250.
 

 Despite this highly questionable history, this Court revived the unilateral revocation rule in
 
 Tony Andreski, supra.
 
 Had this panel decided
 
 Tony Andreski,
 
 it would have exercised its discretion under MCR 7.215(H)(1) and declined to follow
 
 EE Tripp.
 
 The rule is the last vestige of that bygone judicial age when arbitration agreements were regarded as unlawful attempts to oust the courts of jurisdiction. This rule serves no useful purpose today, partic
 
 *277
 
 ularly when the overwhelming public policy of this state favors arbitration to resolve a wide variety of disputes. As this Court held in
 
 Rembert, supra,
 
 133, “our Legislature and our courts have strongly endorsed arbitration as an inexpensive and expeditious alternative to litigation.” Indeed, even the
 
 EE Tripp
 
 Court, which revived the unilateral revocation rule for common-law arbitration, observed that judicial jealousy of arbitration had become obsolete.
 
 E E Tripp, supra,
 
 246-247. We see no reason to adhere to an antediluvian principle recited as dicta in the days of Ulysses S. Grant’s presidency and Queen Victoria’s reign. We would therefore enforce common-law arbitration agreements on the same terms as any other contract, and consign the unilateral revocation rule to legal history’s dustbin.
 

 Affirmed.
 

 [1]
 

 We use the term “plaintiffs” to refer only to Carolyn and Frank Hetrick, and not to bcbs.
 

 [2]
 

 As an intervening plaintiff, bcbs had the status of a party in interest in judicial proceedings for the purpose of enforcing a right to reimbursement.
 
 Blue Cross & Blue Shield of Michigan v Eaton Rapids Community Hosp,
 
 221 Mich App 301, 312; 561 NW2d 488 (1997); MCL 550.1401(6); MSA 24.660(401)(6). This status does not free plaintiffs from their obligations under the arbitration agreement.
 

 [3]
 

 MCL 600.5001
 
 et seq.;
 
 MSA 27A.5001
 
 et seq.
 

 [4]
 

 This rule applied to both the 1989 rules in effect at the time the parties executed the arbitration agreement in 1995 and the amended rules that became effective in 1996.
 

 [5]
 

 Mitsubishi Motors v Soler Chrysler-Plymouth,
 
 473 US 614; 105 S Ct 3346; 87 L Ed 2d 444 (1985),
 
 Shearson/American Express, Inc v McMahon,
 
 482 US 220; 107 S Ct 2332; 96 L Ed 2d 185 (1987), and
 
 Rodriguez de Quijas v Shearson/American Express, Inc,
 
 490 US 477; 109 S Ct 1917; 104 L Ed 2d 526 (1989).
 

 [6]
 

 Interestingly, the Court described this arbitration procedure as
 
 “an expeditious, inexpensive, and proper method, if not a better one than is afforded by a suit." Chippewa Lumber, supra,
 
 121 (emphasis added).
 

 [7]
 

 See also
 
 Detroit v A W Kutsche & Co,
 
 309 Mich 700, 708; 16 NW2d 128 (1944).
 

 [8]
 

 Most recently, in
 
 Brucker v McKinlay Transport, Inc,
 
 454 Mich 8; 557 NW2d 536 (1997), and
 
 Gordon Sel-Way v Spence Bros, Inc,
 
 438 Mich 488, 495; 475 NW2d 704 (1991), our Supreme Court merely noted that the parties’ arbitration agreement qualified as a statutory agreement because it provided for entry of judgment on the arbitrator’s decision.