CORRIGAN, J.
(concurring). I concur with the majority’s decision to affirm the Court of Appeals determina *239 tion that the trial court erred in granting defendants’ motion for summary disposition and in denying plaintiffs’ motion to vacate the arbitration award. A majority of this Court has decided to retain the common-law rule that arbitration agreements are unilaterally revocable at any time. Even if I were inclined to abrogate the unilateral revocation rule, a majority of this Court is not so inclined. Thus, I commend this important policy choice to our Legislature. I urge that body to examine whether it is prudent to retain the common-law unilateral revocation rule. The common-law rule is rooted in an antiquated notion that arbitration is an inferior method of resolving disputes. It undermines the well-established doctrine that parties enjoy the freedom to contract.
The unilateral revocation rule apparently originated in the statement of Lord Coke in Vynior’s Case, 4 Coke, part VIII, 81b, 82a:
For a man cannot by his act make such authority, power, or warrant not countermandable, which is by the law and of its own nature countermandable; as if I make a (a) letter of attorney to make a livery, or to sue an action, & c. in my name; or if I assign auditors to take an account; or if I made one my factor; or if I submit myself to an arbitrament; although these are made by express words irrevocable, or that I grant or am hound that all these shall stand irrevocably, yet they may be revoked.
This Court has referred to the unilateral revocation rule only in cases before the Legislature enacted the Michigan Arbitration Act (MAA), MCL 600.5001 et seq., and virtually always in confusing dicta. As the Court of Appeals explained in dicta in Hetrick v David A Friedman, DPM, PC, 237 Mich App 264, 272-275; 602 NW2d 603 (1999) (emphasis in original), this Court’s jurisprudence regarding the rule has been inconsistent at best:
*240 Our Supreme Court’s nineteenth century decisions did not consistently hold that common-law arbitration agreements are revocable whereas statutory agreements are not. In some cases, the Court at least suggested that either type of arbitration was revocable at the will of either party (which is arguably consistent with the nineteenth century statute, which did not provide that arbitration agreements were irrevocable). In McGunn v Hanlin, 29 Mich 475 (1874), the Court held that a common-law arbitration agreement that did not contain a covenant not to sue could not be enforced. Id., 480. However, the Court expressly declined to consider “whether a statutory agreement, before the arbitrators have acted, stands on a different basis,” thereby leaving the possibility that even statutory agreements were revocable. Id. In Chippewa Lumber Co v Phenix Ins Co, 80 Mich 116; 44 NW 1055 (1890), the Court broadly stated that arbitration agreements in general are unenforceable — without analysis, without reference to any arbitration statute, and without any distinction between statutory and common-law arbitration. Id., 120. Notwithstanding this sweeping declaration, the Court ultimately held that the parties’ arbitration agreement — which utilized arbitration only as a condition precedent to filing a lawsuit — was enforceable.[6] Id., 120-121. Because the Court ultimately enforced the limited arbitration agreement, its statement that an agreement to submit all matters to binding arbitration would have been unenforceable is dicta, not a binding statement of law.[1] Edelberg v Leco Corp, 236 Mich App 177; 599 NW2d 785 (1999). Moreover, because these cases blurred the distinction between *241 common-law and statutory arbitration agreements, neither case warrants application of the unilateral revocation rule today, under the MAA.
The Supreme Court implicitly rejected the unilateral revocation rule in Frolich v Walbridge-Aldinger Co, 236 Mich 425, 429; 210 NW 488 (1926). There, the Court stated that the parties’ arbitration agreement was “not in conformity with our statutory requirements (3 Comp Laws 1915, § 13646 et seq.) and makes no reference to the act, but in any event it is an agreement for a common-law arbitration.” Frolich, supra, 429 (emphasis added). However, the Court did not refuse to enforce the arbitration agreement on the ground that a common-law arbitration agreement was revocable by either party. Instead, the Court held that the plaintiff was entitled to bring a lawsuit because the defendant failed to comply with the arbitration agreement by cooperating with the plaintiffs effort to arbitrate. Id., 432. Indeed, it can be inferred from the Frolich decision that the Court would have enforced the parties’ common-law arbitration agreement if the defendant had honored the terms of the agreement.
In Siewek v F Joseph Lamb Co, 257 Mich 670; 241 NW 807 (1932), the Court implicitly distinguished between statutory and common-law arbitration agreements, and stated that the latter were revocable unless they came under one of two exceptions: arbitration as condition precedent to a lawsuit, or arbitration relating to construction, paving, or installation contracts.[7] Id., 676. Again, the Court’s reliance on an obsolete statute and two obsolete exceptions renders its statement of the unilateral revocation rule irrelevant under the MAA and modern, proarbitration public policy.[2] Rembert [v Ryan Family Steak Houses, Inc, 235 Mich App 118, 132-133; 596 NW2d 208 (1999)].
*242 Thus, the common-law rule is not firmly entrenched in our jurisprudence, but is instead an aberration primarily based on conflicting case law and nonbinding dicta.
In 1961, our Legislature enacted the MAA, modeling it on the Uniform Arbitration Act, which requires the enforcement of arbitration agreements. MCL 600.5011. Since the enactment of the MAA, this case is the Court’s first opportunity to consider the validity of the common-law unilateral revocation rule. While the Court of Appeals recognized the rule in Tony Andreski, Inc v Ski Brule, Inc, 190 Mich App 343, 350; 475 NW2d 469 (1991), and E E Tripp Excavating Contractor, Inc v Jackson Co, 60 Mich App 221, 243; 230 NW2d 556 (1975), these cases have been sharply criticized.[3] In Tony Andreski, Inc, supra at 350-351, Judge GRIFFIN dissented, expressing his disagreement with Michigan’s “anachronistic” common-law rule. The Hetrick panel thereafter criticized the rule and called for an end to it:
The rule is the last vestige of that bygone judicial age when arbitration agreements were regarded as unlawful attempts to oust the courts of jurisdiction. This rule serves no useful purpose today, particularly when the overwhelming public policy of this state favors arbitration to resolve a wide variety of disputes. As this Court held in Rembert, *243 supra, 133, “our Legislature and our courts have strongly endorsed arbitration as an inexpensive and expeditious alternative to litigation.” Indeed, even the E E Tripp Court, which revived the unilateral revocation rule for common-law arbitration, observed that judicial jealousy of arbitration had become obsolete. E E Tripp Excavating Contractor, Inc, supra at 246-247. We see no reason to adhere to an antediluvian principle recited as dicta in the days of Ulysses S. Grant’s presidency and Queen Victoria’s reign. We would therefore enforce common-law arbitration agreements on the same terms as any other contract, and consign the unilateral revocation rule to legal history’s dustbin. [Hetrick, supra at 276-277.]
I agree with Judge GRIFFIN in his dissent in Tony Andreski, Inc, and with the Hetrick panel that the unilateral revocation rule appears to serve no purpose in today’s proarbitration legal climate. Even accepting the Court of Appeals statement in E E Tripp Excavating Contractor, supra at 243, that “historically, common-law arbitration agreements could be revoked or repudiated at will by a party any time prior to announcement of the award,” the purpose behind the rule is no longer valid. As our Court of Appeals has recognized, the unilateral revocation rule originated at a time when courts disfavored arbitration as an ouster of our jurisdiction over legal claims. See Hetrick, supra at 271 (“The origins of the unilateral revocation rule lie in the nineteenth century, when American law disfavored arbitration as second-rate justice at best, or an unlawful usurpation of judicial authority at worst.”); E E Tripp Excavating Contractor, supra at 244 (“The most widely espoused justification for the rule is that specific enforcement of an arbitration agreement improperly ousts the courts of jurisdiction. Attempts by contract to foreclose judicial inquiry were against public policy.”). As E E Tripp Excavating Contractor, supra at 244, noted, the most *244 common policy arguments for the unilateral revocation rule are no longer relevant:
Criticism of the unilateral revocation rule has mushroomed. ...
The heavily case-loaded courts are no longer jealous of their jurisdiction. Where the parties, by a fair agreement, have adopted a speedy and inexpensive means by which to have their disagreements adjusted, we see no public policy reasons for the courts to stand in their way. On the contrary we have a clear expression of public policy in the legislative enactments which provide for statutory arbitration.
In most states, the common-law rule permitting unilateral revocation of arbitration has been altered by statute. La Stella v Garcia Estates, Inc, 66 NJ 297; 331 A2d 1 (1975), citing 6 Williston, Contracts (rev ed, 1938), § 1920, Sturges, Commercial Arbitrations & Awards (1930), § 26, and Domke, The Law & Practice of Commercial Arbitration (1968), § 4.01. Many states have rejected or criticized the ouster and revocability doctrines that form the basis for the unilateral revocation rule. See, e.g., IP Timberlands Operating Co, Ltd v Denmiss Corp, 726 So 2d 96, 103-105 (Miss, 1998) (rejecting the ouster doctrine and expressly overturning “the former line of case law that jealously guarded the court’s jurisdiction”); Kaiser Foundation Health Plan of the Northwest v Doe, 136 Or App 566, 577-579; 903 P2d 375 (1995) (holding that agreements to arbitrate may be specifically enforceable under common law and thus directing that judgment on an oral settlement incorporate the parties’ agreement to arbitrate any remaining issues); Wylie Independent School Dist v TMC Foundations, Inc, 770 SW2d 19, 23 (Tex App, 1989) (holding *245 that agreements to arbitrate future disputes are specifically enforceable on the basis of policy supporting alternative dispute resolution); United Ass’n of Journeymen & Apprentices of the Plumbing & Pipefitting Industry v Stine, 76 Nev 189, 202-214; 351 P2d 965 (1960) (rejecting the common-law rule that agreements to submit all disputes to arbitration were unenforceable, and ruling instead that an agreement to arbitrate a future dispute was valid and enforceable); Rueda v Union Pacific R Co, 180 Or 133, 166; 175 P2d 778 (1946) (“The rule that ‘parties cannot stipulate beforehand to submit their rights generally to the judgment of a designated third party for a final determination’ is unsound. The rule that such agreements oust the courts of jurisdiction has an unworthy genesis, is fallacious in reasoning and has been followed merely because of ancient precedent.”); Hoboken M R Co v Hoboken R Warehouse & Steamship Connecting Co, 132 NJ Eq 111, 117-119; 27 A2d 150 (1942) (explaining that New Jersey had not adopted the ouster doctrine and that arbitrator’s decisions are enforceable); Park Constr Co v Independent School Dist No 32, 209 Minn 182, 184-189; 296 NW 475 (1941) (rejecting the notion that arbitration agreements “oust” courts of jurisdiction and overruling earlier decisions that general agreements to arbitrate are void as contrary to public policy); Ezell v Rocky Mountain Bean & Elevator Co, 76 Colo 409, 411-413; 232 P 680 (1925) (rejecting the argument that common-law agreements to arbitrate are void as being against public policy as attempts to oust the courts of jurisdiction, and holding that parties who contract to submit to common-law arbitration are bound by that contract).[4]
*246 Arbitration is now favored as an efficient, inexpensive, and fair method of resolving disputes. Rembert, supra at 127-133; see also Port Huron Area School Dist v Port Huron Ed Ass’n, 426 Mich 143, 150; 393 NW2d 811 (1986) (“It is well-settled that arbitration is a favored means of resolving labor disputes . . . .”); Detroit v A W Kutsche & Co, 309 Mich 700, 703; 16 NW2d 128 (1944) (“The general policy of this State is favorable to arbitration.... If parties desire arbitration, courts should encourage them.”) The unilateral revocation rule does nothing to encourage arbitration other than convince parties aware of the rule that they have nothing to lose, because they can revoke the arbitration *247 any time before the award. Rather than encouraging parties aware of the rule to enter arbitration, the unilateral revocation rule discourages it by making arbitration an unreliable method of dispute resolution. In today’s legal climate, where arbitration is no longer disfavored, but is an approved and trusted method to resolve disputes, Michigan should no longer countenance a rule that is grounded in distrust of arbitration and discourages parties from relying on arbitration.
Further, the rule tends to benefit those who are aware of it, such as lawyers and other sophisticated parties. It can be harmful to nonlawyers and less sophisticated parties who have no knowledge of the legal rule and are blindsided by it.[5] While the unilateral revocation rule exists, an unknowing party who enters an arbitration agreement may expend substantial amounts of time and money by participating in the arbitration process, only to have the other party revoke the agreement immediately before the arbitrator renders an award. The rule thus is a trap for the unwary. It discourages good-faith participants and leads to disillusionment of parties who are trapped by its application.
*248 I dispute the majority’s contention that parties entering into an arbitration agreement would be left without options without a unilateral revocation rule. Instead, I believe that the unilateral revocation rule undermines our contract doctrine by unfairly limiting the options available to contracting parties. This Court has stated that arbitration agreements are grounded in contract. Arrow Overall Supply Co v Peloquin Enterprises, 414 Mich 95, 98; 323 NW2d 1 (1982). “ £[T]he arbitration promise is itself a contract. The parties are free to make that promise as broad or as narrow as they wish ....’” Port Huron Area School Dist, supra at 151 n 6, quoting United Steelworkers v American Mfg Co, 363 US 564, 570; 80 S Ct 1343; 4 L Ed 2d 1403 (1960) (Brennan, J., concurring). Thus, parties to an arbitration contract should be bound by the same contract principles as parties to any other contract. Under general contract principles, a valid contract is enforceable and may not be revoked unilaterally.[6] Unless a *249 contract condition causes a contract to be void or voidable, such as coercion or fraud, the terms of an arbitration agreement, like any other contract, should be upheld. The parties should not be required to include a provision specifically stating that the arbitration is irrevocable. The revocation rule limits the parties’ freedom to contract by precluding them from entering a common-law agreement to arbitrate that would be enforceable and irrevocable.
Conversely, parties should also be free to include in their common-law arbitration agreement a clause allowing either party to unilaterally revoke the agreement. Thus, a decision to abrogate the unilateral revocation rule would not limit the options of contracting parties by creating a situation where common-law arbitration agreements could never be unilaterally revoked. The parties are limited only by the terms by which they themselves choose to be bound. Accordingly, I do not believe that the unilateral revocation rule is necessary to either protect the right to bring suit or provide parties flexibility in the event of a dispute.
In sum, I believe that the common-law rule allowing unilateral revocation of arbitration agreements is based on the outdated notions that arbitration is an unfavorable means of resolving disputes and that arbitration ousts the courts of their rightful jurisdiction over disputes. The courts are no longer jealous of their jurisdiction, and arbitration is now a favored method of dispute resolution. The unilateral revocation rule has a questionable history in Michigan jurisprudence and has not been recognized by this Court since the Legislature *250 enacted the MAA in 1961. Abrogation of the rule would not limit the options of parties entering arbitration agreements, but would instead encourage arbitration and allow parties the freedom to agree by contract to revocable or irrevocable arbitration as they see fit. Arbitration agreements are contracts and should be governed by the same contractual principles as other agreements. Therefore, I urge the Legislature to consider the wisdom of retaining the common-law unilateral revocation rule in its current form.
YOUNG, J., concurred with CORRIGAN, J.

 The Chippewa Lumber Court held that the arbitration agreement was enforceable and not unilaterally revocable because the agreement made arbitration a condition precedent to bringing suit. Chippewa Lumber, supra at 120-122. This Court has similarly held in several other cases that an agreement containing a clause making arbitration a condition precedent to filing suit or rescission of the contract is enforceable and not unilaterally revocable. See, e.g., Ripley v Lucas, 267 Mich 682; 255 NW 356 (1934); Baumgarth v Firemen’s Fund Ins Co, 152 Mich 479; 116 NW 449 (1908); Norton v Hayden, 109 Mich 682; 67 NW 909 (1896).

 Further, the Siewek Court’s statement that “the general rule that a [common-law] arbitration agreement is not a bar to action” is dicta. Siewek, supra at 676.

 Interestingly, the Court described this arbitration procedure as “an expeditious, inexpensive, and proper method, if not a better one than is afforded by a suit.” Chippewa Lumber, supra, 121 (emphasis added).

 See also Detroit v AW Kutsche & Co, 309 Mich 700, 708; 16 NW2d 128 (1944).

 Additionally, the E E Tripp Excavating Contractor panel did not apply the unilateral revocation rule because the defendant did not unambiguously manifest its intent to revoke the arbitration agreement. Id. at 249.

 The Harvard Negotiation Law Review has also urged courts to disavow the traditional unilateral revocation rule:
*246 It is not appropriate for a court to assume all ADR [alternative dispute resolution] agreements are unenforceable under antiquated “ouster” and “revocability” doctrines that traditionally precluded specific enforcement of pre-dispute agreements to arbitrate. Ouster theory proposed that parties cannot “oust” courts’ power to resolve legal claims, and revocability condoned a party’s unilateral revocation of an arbitration agreement. These doctrines have no solid basis. Nonetheless, some courts continue to apply them, perhaps due to judicial skepticism of private processes or resentment of the Supreme Court’s seemingly pro-arbitration agenda.
Courts should not. .. mask their concerns [regarding pro-arbitration policy] in espousals of antiquated ouster and revocability doctrines. These doctrines are based on faulty legal assumptions and misguided jealousies of private processes that threatened courts’ domain. [Schmitz, Refreshing contractual analysis of ADR agreements by curing bipolar avoidance of modern common law, 9 Harv Negotiation L R 1 (2004), pp 3-4, 28-29.]
See also 12 Corbin, Contracts (interim ed), § 1173, p 330 (“The earlier judicial attitude that regarded the specific enforcement of arbitration as too difficult or otherwise undesirable was already moribund and, by reason of both legislation and popular opinion, should be extinct.”).

 The unilateral revocation rule is not common knowledge among laymen. Even research might not uncover the existence of the rule. For example, the American Arbitration Association’s (AAA) “Beginner’s Guide to Alternative Dispute Resolution” does not mention the unilateral revocation rule. Instead, the AAA guide merely explains that arbitration awards are final: “AAA arbitration awards are final, binding, and legally enforceable, subject only to limited review by the courts. Of course, parties may also agree in advance that awards will be advisory only.” The AAA’s “Drafting Dispute Resolution Clauses — A Practical Guide” states, “To be fully effective, ‘entry of judgment’ language in domestic cases is important.” However, the guide does not warn a drafter of the possible consequences of omitting such a clause from the agreement. Thus, even if an unsophisticated party looks to the AAA guides, that party will not discover the existence of the unilateral revocation rule.

 Indeed, this Court has reiterated on numerous occasions its commitment to enforcing unambiguous contracts as they are -written. See, e.g., Rory v Continental Ins Co, 473 Mich 457, 491; 703 NW2d 23 (2005) (“Consistent with our prior jurisprudence, unambiguous contracts .. . are to be enforced as written unless a contractual provision violates law or public policy.”); Quality Products & Concepts Co v Nagel Precision, Inc, 469 Mich 362, 380; 666 NW2d 251 (2003) (“Our obligation to respect and enforce the parties’ unambiguous contract absent mutual assent to modify that contract precludes us from [permitting unilateral modification of the contract].”); Wilkie v Auto-Owners Ins Co, 469 Mich 41, 51; 664 NW2d 776 (2003) (“This approach, where judges divine the parties’ reasonable expectations and then rewrite the contract accordingly, is contrary to the bedrock principles of American contract law that parties are free to contract as they see fit, and the courts are to enforce the agreement as written absent some highly unusual circumstance, such as a contract in violation of law or public policy.”); Terrien v Zwit, 467 Mich 56, 71; 648 NW2d 602 (2002), quoting Twin City Pipe Line Co v Harding Glass Co, 283 US 353, 356; 51 S Ct 476; 75 L Ed 1112 (1931) (“ ‘The general rule [of contracts] is that competent persons shall have the utmost liberty of contracting and that their agreements voluntarily and *249 fairly made shall be held valid and enforced in the courts.’ ”). These cases make clear that the unilateral revocation rule is an anomaly in our otherwise consistent case law affirming the freedom to contract and the enforceability of unambiguous agreements.